[No. G015822. Fourth Dist., Div. Three. Apr. 25, 1995.]

JOHN MICHAEL DOWNER, Plaintiff and Respondent, v.
FRANK S. ZOLIN, as Director, etc., Defendant and Appellant.

COUNSEL

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Assistant Attorney General, Martin H. Milas and Anne Hunter, Deputy Attorneys General, for Defendant and Appellant.

Stokke & Riddet, Allan H. Stokke, Robison D. Harley, Jr., and Samuel J. Armstrong for Plaintiff and Respondent.

OPINION

SILLS, P. J.—The Department of Motor Vehicles (DMV) provides a state-approved form (DS 367A) for reporting chemical test results to the DMV when a police officer administratively suspends a licensee's driving privilege pursuant to Vehicle Code section 13353.2 (driving with a blood-alcohol concentration (BAC) of 0.08 percent or more). This form, which the officer forwards to the forensics laboratory with the blood or urine sample, requires the forensic analyst to execute a certification under penalty of perjury as to the test results. Completion of the certification provides a proper foundation for use of the report at the DMV administrative hearing.[1]

Relying on a chemical test report prepared by the Orange County Sheriff-Coroner Department crime laboratory, the DMV suspended John Michael

---

[1]In an August 14, 1991, letter from the DMV's chief officer of driver safety to the forensic alcohol laboratories and their analysts, the forensic technicians were instructed to use the new DS 367A form: "A certification has been added to the DS 367A for the laboratory technician

Downer's driving privilege. The superior court found the report was neither sworn nor dated and therefore lacked the indicia of trustworthiness to support the administrative finding Downer had a BAC of 0.08 percent or more. Accordingly, the court granted a writ of mandate commanding the DMV to set aside its decision suspending Downer's driving privilege. We affirm.

I

On August 11, 1993, about 9:30 p.m., California Highway Patrol Officer Hertsch stopped Downer on suspicion of drinking alcohol while driving. Downer was not speeding or driving erratically. According to the officer's sworn statement, Downer displayed objective symptoms of intoxication: bloodshot/watery eyes, odor of alcoholic beverage, and slurred speech. He also failed the field sobriety tests. The officer arrested Downer at 9:55 p.m. for violation of Vehicle Code section 23152 (driving under the influence of alcohol and/or a BAC of 0.08 percent or more). Around midnight, Downer submitted to a urine test.

According to the Orange County crime laboratory's report, five days after the arrest an analyst named Eck tested the urine sample. The analysis yielded a BAC of 0.092 percent.[2] The sample was analyzed again a day later by an analyst named Vallercamp. That analysis yielded a BAC of 0.088 percent.[3] Signatures, purportedly of the analysts, were located next to the figures. The report was not dated, and there were no signatures anywhere near the statement of certification.

---

to complete after analysis of a driver's blood or urine. This certification must be completed. It provides the necessary foundation for use in evidence at DMV hearings. [¶] When a blood sample is collected by the phlebotomist or a urine sample by the officer, the officer immediately completes the top portion of the DS 367A. The officer then forwards the DS 367A with the sample to the laboratory that does the blood/urine analyses for the law enforcement agency. [¶] The forensic technician who performs the analysis must complete the certification, which is the bottom half of the DS 367A. It is entitled, 'Chemical Test Results: Laboratory Use Only.' . . . [¶] The technician who completes the certification should include the arrest number, his or her name, the city where the certificate was signed, the date the form was signed, the technician's signature, and the law enforcement agency or laboratory by whom employed. . . . [¶] If the form is completed properly, it will save the State, law enforcement and others money, by avoiding the expense of subpoenaing the technician who performed the test."

[2]We note Eck is not listed in the report, a computer printout, as a person in the chain of custody of the urine sample. According to the printout, the chain was "HERTSCH-Fss-VALLERCAMP."

[3]We note that Vallercamp is not named in the sheriff's March 12, 1993, "list of persons qualified to perform forensic alcohol analysis," even though her name, signature and initials appear on the laboratory's license which was issued January 1, 1993. Since Downer did not contest this below, we assume the documents in the DMV's files are simply out of date or incomplete and if given the opportunity the DMV could show that Vallercamp was qualified to perform the analysis.

Downer requested an administrative per se hearing under Vehicle Code section 13558, subdivision (b). At the hearing, his counsel objected to the admission of the report because, among other things, it was unsworn and not dated. The hearing officer overruled the objection. Following the close of the hearing, the DMV notified Downer it would suspend his driver's license for four months. Downer petitioned the superior court for a writ of mandate to set aside the suspension. Concluding the forensic report was insufficient to justify the suspension because it was neither sworn nor dated, the court granted the writ.

## II

■ The DMV's appeal focuses primarily on whether Vehicle Code section 23158.2 requires the forensic report to be sworn.[4] However, we need not address that issue. The report was inadmissible hearsay, and on that ground alone the judgment may be affirmed.

"When an administrative agency initiates an action to suspend or revoke a license, the burden of proving the facts necessary to support the action rests with the agency making the allegation. Until the agency has met its burden of going forward with the evidence necessary to sustain a finding, the licensee has no duty to rebut the allegations or otherwise respond. [Citations.]" (*Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313].) Here, the DMV relied on the report submitted by the forensics laboratory to suspend Downer's driver's license. Although the report is hearsay, the DMV insists it is admissible under the official record exception to the hearsay rule. (Evid. Code, § 1280.)

"A writing is admissible under the official record exception to the hearsay rule if it was made (1) as a record of an act, condition, or event, (2) by and

---

[4]Presumably it does. Vehicle Code section 23158.2, subdivision (a) requires the arresting officer to "immediately forward to the [DMV] *a sworn report* of all information relevant to the enforcement action, including . . . a report of the results of any chemical tests which were conducted on the person . . . ." (Italics added.) A sworn report provides the DMV with competent evidence sufficient to support a driver's license suspension. (*Santos* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 549-550 [7 Cal.Rptr.2d 10].) An unsworn report merely listing the test results—whether by the arresting officer or the analyst who conducted the test—would be inadmissible hearsay and therefore incompetent evidence. (*Imachi* v. *Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 817 [3 Cal.Rptr.2d 478].) In any event, Vehicle Code section 14104.7 provides that the DMV's hearing officer "shall consider its official records and may receive *sworn* testimony." (Italics added.) Unless the report can be considered an official record of the DMV, section 14104.7 strongly suggests the report must be sworn to be admissible at the DMV administrative hearing. While the court in *Prince* v. *Zolin* (Cal.App.) held that an unsworn, unsigned, and uncertified computer printout was admissible at a DMV administrative hearing as evidence of the test results, we question its holding in light of the fact it makes no reference to the "sworn testimony" requirement of section 14104.7.

within the scope of a public employee's duty, (3) at or near the time of the act, condition, or event, and (4) the sources of information and method and time of preparation were such as to indicate its trustworthiness. . . ." (*Arconti* v. *Zolin*▉ (Cal.App.) citation omitted.) While the report in *Arconti* was dated, it did not indicate when the tests were completed. Consequently, the license suspension was overturned because, among other things, there was no way to tell whether the report was made at or near the time of the reported event.

In this case, we are faced with the obverse situation: the report indicates when the tests were completed, but it is not dated and there is no other information which the trial court could rely on to deduce its date of preparation.[5] The absence of evidence showing the report was made at or near the time of the reported event renders this report inadmissible hearsay under Evidence Code section 1280.

However, the DMV insists the presumption afforded by Evidence Code section 664, that official duty was regularly performed, can supply the missing information. It argues forensic analysts have a duty under Vehicle Code section 23157, subdivision (g), and California Code of Regulations, title 17, sections 1215 through 1222.1, to accurately report the results of those analyses to the DMV within 20 days of the arrest.[6] But statutory and regulatory requirements that the laboratory must forward test results within 20 days do not impose any particular time requirement on the analysts that can be assumed to have been met pursuant to Evidence Code section 664's presumption. (See *Yordamlis* v. *Zolin* (1992) 11 Cal.App.4th 655, 661 [14 Cal.Rptr.2d 225] [rejecting similar argument presumption can be used to establish driver gave blood sample within three hours of "lawful" arrest]; *Santos* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 550, fn. 10 [rejecting similar argument presumption can be used to establish driver

---

[5]Printed in the top left hand corner of the report is "08/23/93" with the letters "BA" underneath. The DMV argues this shows the date the report was made. However, the superior court found as a factual matter that the report was not dated. Because the printed "date" sits alone without any apparent connection to the test results, when the report was prepared, or when the analysts scribbled their signatures next to the test results, we cannot say the court's factual finding was clearly erroneous. But even if it were, a report prepared nearly a week after the forensic tests were completed does not fall within the statutory requirement that the report be prepared "at or near the time" of the reported event. (Evid. Code, § 1280.)

[6]At the time of Downer's arrest, Vehicle Code section 23157, subdivision (g) actually required the forensic laboratory to forward the test results to the DMV within 15 days of the arrest. (See Veh. Code, § 23157, subd. (i) [making statute operative July 1, 1993], added by Stats. 1993, ch. 1244, § 16 and repealed by Stats. 1994, ch. 938, § 17, eff. Sept. 28, 1994.) The amendment has no effect on our analysis of the legal issue presented by this appeal.

gave blood sample within three hours because regulations require blood sample to be drawn "as soon as feasible"].)[7]

There was no other evidence the court could have relied on to uphold the administrative suspension. (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 266, fn. 10 [198 Cal.Rptr. 145, 673 P.2d 732] [circumstantial evidence besides test results may be used to show licensee was driving with a BAC above the legal limit]; see also *McKinney* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 526, fn. 6 [7 Cal.Rptr.2d 18].) Downer was neither speeding nor driving erratically, the officer admitted at the administrative hearing Downer passed several field sobriety tests, and the officer did not testify that in his opinion Downer was operating a vehicle with a BAC of 0.08 percent or more. Further, the declaration of Darrell Clardy, a forensic toxicologist and former supervising criminalist with the Orange County crime laboratory, questioned the method of analysis used by the laboratory and stated that in his opinion the correct method of analysis would have resulted in a BAC of around 0.04 percent. (See *Yordamlis* v. *Zolin*, *supra*, 11 Cal.App.4th at pp. 662-663.)

The judgment is affirmed. Downer shall recover his costs on appeal.

Sonenshine, J., and Wallin, J., concurred.

---

[7]We are unaware of any case which comes to a contrary result. Although the court in *Prince* v. *Zolin*, *supra*, held a computer printout was admissible under Evidence Code section 1280 "because the laboratory analysis must be in accord with specified standards of performance set forth in Title 17 of the California Code of Regulations," there is nothing in the opinion indicating whether the printout was or was not dated. In *Santos* v. *Department of Motor Vehicles*, *supra*, 5 Cal.App.4th at page 547, on the other hand, the court found the forensic report fell within the presumption official duty was regularly performed because the report was prepared and dated the same date the blood sample was received and tested. Since *Prince* relies on *Santos* for the proposition that a forensic report is generally admissible under Evidence Code section 1280, we assume the computer printout in *Prince* was dated in some respect. Otherwise, *Santos* would not support its analysis.