[No. A097861. First Dist., Div. Two. Oct. 25, 2002.]

KENYA KOMIZU, Plaintiff and Appellant, v.
STEVE GOURELY, as Director, etc., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*This opinion is certified for publication with the exception of part II.

**COUNSEL**

Michael Thorman for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Michael A. Neri, Fiel D. Tigno and Jerry Curtis, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**KLINE, P. J.**—Kenya Komizu (appellant) appeals after the trial court denied his petition for a writ of mandate challenging the suspension of his driver's license by the Department of Motor Vehicles (DMV) for driving under the influence. He contends (1) the alcohol analysis report showing the amount of alcohol in his blood was erroneously admitted into evidence; (2) the arresting officer's sworn statement did not contain all information necessary to the enforcement action; and (3) there was no proof that his blood was drawn within three hours of the accident. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

At 11:57 p.m. on October 26, 2000, Officer Downs of the Burlingame Police Department received a call regarding a vehicle that had gone into the San Francisco Bay near Beach Road and Airport Boulevard. He arrived at that location approximately three minutes later and observed physical evidence showing that a collision had occurred on Airport Boulevard where the road turns sharply to the right. Downs observed a Toyota car located about 90 percent submerged in the bay, approximately 92 feet west of the point of impact.

Appellant was found approximately 100 yards west of his vehicle, having apparently exited the vehicle and pulled himself out of the water before police arrived. Appellant was barely conscious at the scene and was suffering from hypothermia. He was taken by ambulance to San Francisco General Hospital. Downs and another officer later examined the car and found the keys still in the ignition as well as paperwork showing that the car had been given to appellant by the United Motor Manufacturer on October 19, 2000.

At 1:00 a.m. on October 27, 2000, Officer Ford of the Burlingame Police Department arrived at the scene and contacted appellant inside an ambulance. Ford could smell the odor of alcohol coming from appellant. Due to appellant's injuries, no field sobriety tests were given before he was transported to the hospital. At the hospital, Ford contacted appellant in the emergency room, where he could still smell alcohol on appellant's breath. Appellant gave conflicting statements about someone else that might have been in the vehicle with him. Ford told appellant he was under arrest and told him he would have to submit to a blood test. After being informed of his *Miranda*[1] rights, appellant said he had eaten dinner at a restaurant in Burlingame and had consumed three glasses of sake between 8:00 and 10:00 p.m. He remembered getting into the backseat of his car and claimed he had let an unknown person drive his car. The next thing appellant remembered was being in the water.

The result of the blood test showed that appellant's blood-alcohol concentration (BAC) was 0.13 percent. Based on this result, the DMV ordered appellant's driver's license suspended. Following an administrative hearing, the hearing officer upheld the suspension of appellant's driver's license.[2] Appellant then filed a petition for a writ of mandate. Following a hearing, the trial court denied the petition. This timely appeal followed.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

[2] The hearing officer concluded: "Based on this blood test, accident circumstances, admission of alcohol consumption and objective symptoms of intoxication, the preponderance of

## DISCUSSION

"[T]he administrative per se laws are intended to provide an efficient mechanism whereby those persons who drive after consuming dangerous amounts of alcohol can have their driver's licenses quickly suspended so as to ensure they will not endanger the public by continuing to drive." (*Lake v. Reed* (1997) 16 Cal.4th 448, 462 [65 Cal.Rptr.2d 860, 940 P.2d 311].) The relevant statutes include Vehicle Code section 13353.2, subdivision (a)(1),[3] which mandates that the DMV immediately suspend the license of a person found to be driving with 0.08 percent or more of alcohol in his or her blood. The DMV must automatically review its initial decision to suspend a license. (§ 13557, subd. (a).) If requested by the driver, the DMV must hold a hearing on its decision to suspend a license. (§ 13558, subd. (a).) At the hearing, the DMV has the burden of proving: (1) the officer had reasonable cause to believe the driver had been driving under the influence; (2) the driver was arrested; and (3) the driver was driving with 0.08 percent or higher BAC. (§§ 13557, subd. (b)(2), 13558, subd. (c)(2).) A driver who is dissatisfied with the result of the DMV administrative hearing may file a petition for writ of mandate with the trial court. (*Solovij v. Gourley* (2001) 87 Cal.App.4th 1229, 1233 [105 Cal.Rptr.2d 278].) The trial court then determines, based on its independent judgment, whether the DMV's decision was supported by the weight of the evidence. (*Ibid.*)

"On appeal, we 'need only review the record to determine whether the trial court's findings are supported by substantial evidence.' [Citation.] ' "We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]" ' [Citations.]" (*Lake v. Reed, supra,* 16 Cal.4th at p. 457.)

### I. *Admission of the Alcohol Analysis Report into Evidence*

Appellant first contends that the only evidence that his BAC was 0.08 percent or higher was erroneously admitted into evidence at the hearing. The alcohol analysis report stating that appellant's BAC was 0.13 percent also states that his blood was analyzed on November 1, 2000, but

---

evidence indicates [appellant's] blood alcohol was .08% or more at the time of driving and accident. The three-hour presumption was not overcome by [appellant's] evidence. [Appellant] failed to testify and address the issue of driving, or identify another driver and his statements to officers and witnesses at the scene and hospital were contradictory."

[3]All further statutory references are to the Vehicle Code unless otherwise indicated.

that the report was not typed until November 7, 2000. Thus, according to appellant, the report did not qualify for admission at the hearing as an official record, pursuant to Evidence Code section 1280, because it failed to satisfy that section's requirement that the writing be made at or near the time of the act. (See Evid. Code, § 1280, subd. (b).)[4] Hence, appellant claims the report was inadmissible hearsay, which could not be used as evidence to support his license suspension.

The trial court found that the hearing officer had not erred in relying on the alcohol analysis report, stating: "Well, in examining the report of the forensic lab, it does appear to me that it does not comply with 1280 of the Evidence Code in that the report was made November 7th, six days after the analysis was done by Mr. Wong [the forensic laboratory analyst]; however, the Court also finds that the rules regarding administrative hearing[s] are very different than those that are required in a court of law, and I find that this document is substantially reliable; that it's a mere postponing of the typing of the report rather than the recording of the analysis. It's clear from the way the report was worded that the typist took it from some other entry, a journal-type entry, that Mr. Wong makes, so that objection is overruled."

In *Lake v. Reed, supra,* 16 Cal.4th at page 458, our Supreme Court explained that one aspect of the accelerated procedures of the administrative per se laws "is a slight relaxation of the rules of evidence applicable to an administrative per se review hearing." In particular, it noted that Government Code section 11513 addresses the admissibility of evidence generally in administrative hearings. (*Ibid.*)

Subdivision (c) of Government Code section 11513 provides: "The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." Subdivision (d) of that section further provides in relevant part: "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (Gov. Code, § 11513, subd. (d).)

---

[4] Evidence Code section 1280 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Even assuming, as the trial court found, that the report did not satisfy subdivision (b) of Evidence Code section 1280 because it was typed six days after appellant's blood was analyzed (compare *Downer v. Zolin* (1995) 34 Cal.App.4th 578, 582, fn. 5 [40 Cal.Rptr.2d 288] with *People v. Martinez* (2000) 22 Cal.4th 106, 128 [91 Cal.Rptr.2d 687, 990 P.2d 563]),[5] substantial evidence supports the trial court's finding that the report was nevertheless admissible. The court found the document to be substantially reliable in that the wording of the report reflected a postponement, not in the recording of the analysis, but merely in the typing of "a journal-type entry."[6] We conclude that the report, although hearsay, was admissible pursuant to Government Code section 11513, subdivision (d), because it supplemented other evidence introduced at the hearing.

In *McKinney v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 526, footnote 6 [7 Cal.Rptr.2d 18], a panel of this division explained that "[w]hile a chemical test result is usually relied upon by the hearing officer as decisive, we point out that it is not the only means of establishing that a driver's [BAC] was .08 or more. [¶] As our Supreme Court has noted, what the Legislature has prohibited is *driving* a vehicle with a blood-alcohol rate over the proscribed limit, not driving when a *chemical test* shows it to be over the limit. [Citation.] Thus, both parties are free to introduce circumstantial evidence bearing on whether the driver's [BAC] exceeded the permissible level. [Citation.] 'Evidence regarding the manner in which a defendant drove, performed field sobriety tests, and behaved is *admissible and relevant* as tending to establish that he did or did not have a 0.10 [now 0.08] [BAC] while driving.' [Citation.]" (Italics in original.)[7]

In this case, there was circumstantial evidence relating to appellant's BAC contained in the police officers' reports. This evidence included the interview with appellant conducted by the arresting officer, Officer Ford, at

[5]In *Downer v. Zolin*, *supra*, 34 Cal.App.4th at page 582, footnote 5, the appellate court stated: "[A] report prepared nearly a week after the forensic tests were completed does not fall within the statutory requirement that the report be prepared 'at or near the time' of the reported event. (Evid. Code, § 1280.)" In *People v. Martinez*, *supra*, 22 Cal.4th at page 128, the California Supreme Court explained that "the timeliness requirement [of Evidence Code section 1280, subdivision (b)] 'is not to be judged . . . by arbitrary or artificial time limits, measured by hours or days or even weeks.' [Citation.] Rather, 'account must be taken of practical considerations,' including 'the nature of the information recorded' and 'the immutable reliability of the sources from which [the information was] drawn.' [Citation.]"

[6]At the hearing, David Lewis testified for appellant as an expert on forensic toxicology. Lewis opined that irregularities in the alcohol analysis report—particularly the fact that the report incorrectly stated that the agency involved was the Belmont Police Department, rather than the Burlingame Police Department—rendered it unreliable. The hearing officer disagreed and found the document trustworthy. The trial court plainly did not find Lewis's testimony convincing.

[7]In *Baker v. Gourley* (2002) 98 Cal.App.4th 1263 [120 Cal.Rptr.2d 348], the Fourth District Court of Appeal disputed the reasoning in *McKinney* and other cases to the extent they concluded that circumstantial evidence, without a valid chemical test, is sufficient to suspend

approximately 4:00 a.m. on October 27, 2000, in which appellant acknowledged that he had consumed three glasses of sake between 8:00 and 10:00 p.m., that he was feeling the effects of the drinks, and that he had not been drinking since the accident. The arresting officer also detected the odor of alcohol coming from appellant, both at the accident scene and later at the hospital, and noted that appellant's eyes were bloodshot and/or watery.[8] Additional evidence includes appellant's conflicting statements regarding an unknown driver, as well as the nature of the accident, in which appellant failed to make a necessary turn and caused his car to go into the bay. (See *McKinney v. Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 526, fn. 6.)

This circumstantial evidence, together with the forensic report—which was found reliable by the trial court and which was admissible to supplement the circumstantial evidence (see Gov. Code, § 11513, subd. (d))—provided the trial court with substantial evidence that appellant's BAC was 0.08 percent or higher at the time of the accident. (See *Lake v. Reed, supra,* 16 Cal.4th at pp. 457, 458.)

II.   *Sufficiency of Officer Ford's Sworn Statement*\*

. . . . . . . . . . . . . . . . . . . . . . . .

III.   *Proof That Appellant's Blood Was Drawn*
*Within Three Hours of the Accident*

■   Appellant's final contention is that there was no proof that his blood was drawn within three hours of the accident.

Section 23152, subdivision (b), provides in relevant part: "In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."

In *McKinney v. Department of Motor Vehicles, supra,* 5 Cal.App.4th at page 524, in the context of a determination of when the driving occurred, we explained that a hearing officer is not constrained to consider only direct

---

a driver's license. In the present case, the circumstantial evidence *is in addition to, not instead of,* a valid chemical test. (See Gov. Code, § 11513, subd. (d).)

[8]Due to appellant's injuries, the officer did not have the opportunity to observe appellant's gait or to administer field sobriety tests.

\*See footnote, *ante,* page 1001.

evidence but may draw inferences and deductions of fact from the facts before him or her.

Here, on the question of whether the accident occurred within three hours before the blood test was administered at 2:15 a.m., the trial court stated: "It appears to me that all the evidence and the reasonable inferences that can be drawn from that evidence are that the accident occurred sometime prior to 11:57 but at or near that time . . . ."

Appellant cites *Santos v. Department of Motor Vehicles* (1992), 5 Cal.App.4th 537, 549-550 [7 Cal.Rptr.2d 10], and *Yordamlis v. Zolin* (1992) 11 Cal.App.4th 655, 660 [14 Cal.Rptr.2d 225], in which the DMV submitted absolutely no evidence to establish when the drivers' blood samples were given, and the appellate courts therefore concluded that there was no basis for inferring that the drivers' BAC was 0.08 percent or higher. We find that this case is more like *Jackson v. Department of Motor Vehicles* (1994) 22 Cal.App.4th 730 [27 Cal.Rptr.2d 712] than the cases cited by appellant.

In *Jackson*, the officer received a radio call at 12:57 a.m. about a traffic accident and arrived at the scene three minutes later. (*Jackson v. Department of Motor Vehicles, supra,* 22 Cal.App.4th at p. 733.) Jackson's vehicle had been rear-ended while stopped at a traffic light. The officer noticed that Jackson exhibited symptoms of intoxication, including bloodshot watery eyes, slurred speech, odor of alcohol, and unsteady gait. (*Ibid.*) Jackson told the officer he had had one beer at 11:00 p.m. and had started driving from a club when his car was rear-ended. (*Ibid.*) The officer administered field sobriety tests and arrested Jackson at 1:45 a.m., and a breath test conducted at 2:37 a.m. showed a blood-alcohol level above the legal limit. (*Id.* at pp. 734-735.)

The appellate court rejected a claim that insufficient evidence supported the conclusion that Jackson had driven within three hours of the administration of the breath test, observing that "the breath test was performed less than two hours after the radio call about the traffic accident. Absent any reason to conclude the radio call to respond to the accident was made more than an hour after the accident with Jackson driving occurred, the hearing officer could reasonably infer the breath test was performed within three hours of the time of driving. [Citations.]" (*Jackson v. Department of Motor Vehicles, supra,* 22 Cal.App.4th at p. 741.)

Here, Officer Downs reported that he received a call "of a vehicle into the bay" at 11:57 p.m., and that he arrived at the scene approximately three minutes later. We find that, as in *Jackson,* the trial court in this case was

reasonable in drawing the inference that Officer Downs received the call that a vehicle had gone into the bay very near to the actual time the accident occurred, and certainly after 11:15 p.m. (See *Jackson v. Department of Motor Vehicles, supra,* 22 Cal.App.4th at p. 741; see also *McKinney v. Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 524.) That appellant's car had drifted some 92 feet and appellant had climbed out of the vehicle and the bay between the accident and Officer Downs's arrival does not undermine this conclusion. No evidence was presented to show that both of these events could not have occurred in the minutes between the accident and the officer's arrival. (See *Jackson v. Department of Motor Vehicles, supra,* 22 Cal.App.4th at p. 741.)

Accordingly, substantial evidence supports the trial court's conclusion that the accident occurred after 11:15 p.m., less than three hours before appellant's blood was drawn at 2:15 a.m. The presumption of section 23152, subdivision (b), is therefore applicable.

DISPOSITION

The judgment is affirmed.

Lambden, J., and Ruvolo, J., concurred.