[No. G036880. Fourth Dist., Div. Three. Dec. 12, 2006.]

BRENT ALLEN GLATMAN, Plaintiff and Respondent, v.
GEORGE VALVERDE, as Director, etc., et al., Defendants and Appellants.

**COUNSEL**

Bill Lockyer, Attorney General, Jacob A. Applesmith, Assistant Attorney General, Elizabeth Hong and Celine M. Cooper, Deputy Attorneys General, for Defendants and Appellants.

Law Offices of Ronald A. Jackson and Ronald A. Jackson for Plaintiff and Respondent.

OPINION

IKOLA, J.—The Department of Motor Vehicles (DMV), George Valverde, DMV director, and R. Sammartino, a DMV hearing officer (collectively, appellants), appeal after a superior court judge issued a writ commanding the DMV to set aside its suspension of Brent Allen Glatman's driver's license. Appellants contend the court erred by finding the results of Glatman's blood test were not timely recorded, as required by Evidence Code section 1280, subdivision (b).[1] We affirm.

## FACTS

On July 24, 2005, Officer J. Baggs stopped Glatman for speeding on Pacific Coast Highway and observed Glatman exhibited "red watery eyes, slurred speech, unsteady gait, [and] a strong odor of an alcoholic beverage." Glatman stated "he had consumed 4–5 bottles of beer." He failed several field sobriety tests administered by Baggs and was arrested by Baggs pursuant to Vehicle Code section 23152, subdivision (a) (driving under the influence of alcohol). Glatman surrendered his driver's license to Baggs and was notified he could request a hearing to challenge the suspension of his license.

A forensic alcohol examination report (the Forensic Report) prepared by the Sheriff-Coroner Department's forensic science services on August 1, 2005, reflected the following: At 12:30 a.m. on July 25, one hour after Glatman's arrest, his blood was drawn for a blood-alcohol concentration (BAC) test. That same day a forensic analyst at the sheriff-coroner's department analyzed the blood sample and determined Glatman's BAC was 0.137. The next day another sheriff-coroner's forensic analyst analyzed the sample and determined Glatman's BAC was 0.135. The two analysts certified these test results by their signatures dated August 1, 2005, on the Forensic Report, one week after Glatman's blood was drawn.

In September 2005, at an administrative per se hearing held before a DMV hearing officer, Glatman's counsel objected to the admission into evidence of the Forensic Report on hearsay and other grounds. Under section 1280's hearsay exception for records made by public employees, the Forensic Report was admissible if, among other requirements, "[t]he writing was made at or

---

[1] All statutory references are to the Evidence Code unless otherwise stated. Section 1280 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: (a) The writing was made by and within the scope of duty of a public employee. (b) The writing was made at or near the time of the act, condition, or event. (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

near the time of the act, condition, or event," as required by subdivision (b) of that section. Glatman's counsel argued, inter alia, that suspension of Glatman's license was unjustified because his BAC tests were not recorded at or near the time of the blood analysis. The hearing officer suspended Glatman's license for one year, finding, inter alia, the certification of the blood test results was timely.

Glatman petitioned the superior court for a writ of mandate. At the hearing on the petition, the DMV relied on two reports to establish Glatman's BAC was greater than the statutory requisite of .08 percent for driving under the influence of alcohol: (1) the Forensic Report; and (2) the field sobriety test report of breath tests (preliminary alcohol screen tests) administered by Officer Baggs showing Glatman's BAC was 0.132 and 0.122. The court stated the Forensic Report was untimely and the field sobriety test report might be inadmissible. The court directed the parties to further brief the issue. After considering the supplemental briefing, the court granted the petition and issued the writ commanding the DMV to set aside its suspension of Glatman's license.

## DISCUSSION

*The Court Did Not Err in Finding the Forensic Report Was Untimely*

Appellants contend the court erred in concluding Glatman's blood test results were not recorded at or near the time of the analysis of his blood sample. They assert the analysts entered the test results into a computer database soon after completing each analysis, and argue the "preparation of the [Forensic Report] on August 1, 2005 . . . was simply the retrieval of the recorded information from the computer database." Appellants further contend that section 664 "establishes a presumption that [Glatman's] blood alcohol test result was recorded in compliance with official duties."

We review for abuse of discretion the court's ruling the Forensic Report did not meet the timeliness requirement of section 1280, subdivision (b). "A trial court has broad discretion in determining whether a party has established [the] foundational requirements [of section 1280]. [Citation.] Its ruling on admissibility 'implies whatever finding of fact is prerequisite thereto; a separate or formal finding is, with exceptions not applicable here, unnecessary. [Citation.]' [Citation.] A reviewing court may overturn the trial court's exercise of discretion ' "only upon a clear showing of abuse." ' "[2] (*People v. Martinez* (2000) 22 Cal.4th 106, 120 [91 Cal.Rptr.2d 687, 990 P.2d 563] (*Martinez*).)

---

[2] When ruling on a writ petition challenging an order suspending a driver's license, a trial court exercises its independent judgment. (*Lake v. Reed* (1997) 16 Cal.4th 448, 457 [65 Cal.Rptr.2d 860, 940 P.2d 311].) Generally, an appellate court reviews the trial court's findings

Applying this standard of review, we conclude the court did not abuse its discretion in finding the Forensic Report, prepared "a week later," was not made " 'at or [near] the time of the event.' "[3] Although appellants assert the analysts promptly entered the test results into a computer database, the record contains no support for this assertion. The computer printout in the clerk's transcript is dated September 6, 2005, one month *after* the date of the Forensic Report. The printout contains no reference to the date on which the test results were entered into the computer database. Indeed the printout does not even contain both test results but rather a single, rounded-off result. The record is also silent as to the recordation procedures followed by the sheriff-coroner's department. In short, there is no evidence that Glatman's test results were recorded in a computer database (or anywhere else) prior to August 1.

■ Appellants quote our Supreme Court's observation in *Martinez, supra,* 22 Cal.App.4th 106, "that the timeliness requirement 'is not to be judged . . . by arbitrary or artificial time limits, measured by hours or days or even weeks.' " (*Id.* at p. 128.) But the *Martinez* court also stated: " 'Whether an entry made subsequent to the transaction has been made within a sufficient time to render it within the [hearsay] exception depends upon whether the time span between the transaction and the entry was so great as to suggest *a danger of inaccuracy by lapse of memory.*' " (*Ibid.,* italics added.) The *Martinez* court held the DMV's "entry into CLETS [California Law Enforcement Telecommunications System] of criminal information it receives does not depend on memory, but simply involves a transfer of information from one form of storage—the disposition reports—to another—the CLETS database. Under these circumstances, the Department's statutory record-ing duties are sufficiently specific to support the trial court's discretionary determination that the CLETS printout met the timeliness requirement of the official records exception." (*Ibid.*)

■ In contrast, the instant case presents a "danger of inaccuracy by lapse of memory." (*Martinez, supra,* 22 Cal.4th at p. 128.) Appellants concede that, if the analysts relied on memory, "even a lapse of one day could cast serious doubt about whether such recordation was made sufficiently 'at or near' the time of testing to be deemed trustworthy." But appellants argue that, given the number of tests an analyst performs each day, it is unreasonable to infer

---

for substantial evidence. (*Ibid.*) Here, however, appellants challenge the court's section 1280 ruling; the abuse of discretion standard of review therefore applies.

[3] The court acknowledged Glatman's reliance on our opinion in *Downer v. Zolin* (1995) 34 Cal.App.4th 578 [40 Cal.Rptr.2d 288] (*Downer*), where we stated in a footnote that "a report prepared nearly a week after the forensic tests were completed does not fall within the statutory requirement that the report be prepared 'at or near the time' of the reported event." (*Id.* at p. 582.) The court noted, however, that the *Downer* statement was dictum and *Downer* "was later disapproved by our Supreme Court in other respects."

the analyst would try to retain all the test results in his or her head. The only reasonable inference, according to appellants, is that "labs have policies and procedures in place to ensure the timely recordation of such results by analysts." ■ But an inference may be drawn only if the "proposed conclusion is a reasonable, logical, and nonspeculative deduction from the facts proved." (*S. C. Anderson, Inc. v. Bank of America* (1994) 24 Cal.App.4th 529, 539, fn. 12 [30 Cal.Rptr.2d 286].) Here, the record is silent as to the department's recordation policies and procedures, any automatic recording capability of the testing equipment used, and the average number of tests performed by an analyst each day.

Appellants rely on *Komizu v. Gourley* (2002) 103 Cal.App.4th 1001 [127 Cal.Rptr.2d 229], where an appellate court upheld a trial court's finding that an alcohol analysis report was reliable because "the wording of the report reflected a postponement, not in the recording of the analysis, but merely in the typing of 'a journal-type entry.' " (*Id.* at p. 1007.) Thus, *Komizu* involved a transfer of data from one form of recordation to another (as in *Martinez, supra,* 22 Cal.4th 106). Here, in contrast, the Forensic Report's wording sheds no light on whether the test results were first recorded on a date earlier than August 1.

And while appellants point out the Forensic Report was prepared only five *working* days after the date of Glatman's arrest, memory is subject to erosion with every day that passes, whether working or nonworking.

Alternatively, appellants contend section 664 creates a presumption the analysts timely recorded the test results. Section 664 provides: "It is presumed that official duty has been regularly performed." Appellants argue that regulations promulgated under Health and Safety Code section 100700 (governing laboratories performing forensic alcohol analysis tests by or for law enforcement agencies) impose an official duty on forensic analysts to properly record test results. But while those regulations require laboratories to maintain records, they specify no deadlines or time periods or timeliness requirements governing such recordation. In *Yordamlis v. Zolin* (1992) 11 Cal.App.4th 655 [14 Cal.Rptr.2d 225], the Court of Appeal rejected "the DMV's attempt to rely on the presumption that an 'official duty has been regularly performed . . .' (. . . § 664) to establish that [motorist] gave the blood sample within three hours of driving." (*Id.* at p. 661.) The *Yordamlis* court found "nothing in the language of [Vehicle Code section 23157] that

'imposes any particular time requirement that can be assumed to have been met pursuant to the presumption codified by . . . section 664.' "[4] (*Yordamlis*, at p. 661.)

Appellants rely on *Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133 [7 Cal.Rptr.2d 818] (*Davenport*), where an appellate court recognized a section 664 presumption. (*Davenport*, at p. 139.) In *Davenport*, the licensee objected at the administrative hearing to the admission of the arresting officer's sworn statement on the grounds "the document failed to establish that the breath test given to him was given in a correct manner, that the machine used for the test was operating properly, or that the officer who administered the test was properly trained." (*Id.* at p. 138.) The hearing officer sustained the order of suspension; the trial court denied the licensee's petition to set aside the order. (*Id.* at pp. 138–139.) The Court of Appeal affirmed the trial court's denial of the petition, and recognized a presumption under section 664 that chemical tests "were administered in compliance with statutory and regulatory requirements." (*Davenport*, at p. 139, capitalization omitted.) Critical to the *Davenport* decision, however, was the existence of a statute and·regulations promulgated thereunder which imposed an official duty on law enforcement officers "to perform blood-alcohol analyses by methods devised to assure reliability." (*Id.* at p. 141.) In another significant distinction from the instant case, *Davenport* involved subdivision (c) of section 1280, which mandates that "sources of information and method and time of preparation" of writings be trustworthy, *not* the timeliness requirement of subdivision (b) of section 1280. (6 Cal.App.4th at pp. 142–143.)

Finally, appellants argue the summary nature of administrative per se hearings militates against requiring forensic analysts to testify. But there are other ways of evidencing the prompt recordation of test results, short of analysts testifying—for example, preparing a laboratory report soon after completing a test, or at least providing evidence the analysts' results were truly entered into the computer database immediately and only printed out later.

The court did not abuse its discretion in finding the Forensic Report was *not* prepared at or near the time of the recorded event, as required under section 1280, subdivision (b).[5]

---

[4] Nor does Vehicle Code section 23612's mandate that blood test results be sent to the DMV within 15 calendar days of the date of arrest have any bearing on whether analysis results were timely recorded.

[5] We need not address appellants' further contention the court erred in concluding the evidence did not support a finding Glatman drove with a BAC of at least 0.08 percent, because that contention is predicated on appellants' assumption the test results in the Forensic Report were admissible.

## DISPOSITION

The judgment is affirmed. Respondent shall recover his costs on appeal.

Bedsworth, Acting P. J., and O'Leary, J., concurred.