[No. E046731. Fourth Dist., Div. Two. Oct. 29, 2009.]

RONALD ALAN LEE, Plaintiff and Respondent, v.
GEORGE VALVERDE, as Director, etc., Defendant and Appellant.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Celine M. Cooper and Michael Yi, Deputy Attorneys General, for Defendant and Appellant.

Milligan, Beswick, Levine & Knox and C. Patrick Milligan for Plaintiff and Respondent.

## OPINION

**MILLER, J.**—Plaintiff and respondent Ronald Alan Lee was arrested for driving under the influence (Veh. Code, §§ 23152, 23153)[1] and had his driver's license suspended. Lee requested an administrative per se hearing in order to challenge his license suspension. The hearing officer upheld the suspension. Lee filed a petition for writ of mandate in the superior court seeking an order setting aside the suspension of his license. The superior court granted the petition ruling that the document establishing that Lee was driving with a blood-alcohol concentration (BAC) of 0.08 percent or higher was inadmissible hearsay and improperly admitted at the hearing below.

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

On appeal, George Valverde, as Director of the Department of Motor Vehicles (the Department), contends that the trial court erred in concluding that the forensic report was not admissible under Evidence Code section 1280 (the public records exception). Lee replies that the court correctly determined that the forensic report was inadmissible and, hence, properly issued a writ of mandate ordering the Department to set aside its order suspending his driving privileges. We hold that the superior court abused its discretion in determining that the forensic report was inadmissible hearsay. We, therefore, reverse the judgment below.

## FACTUAL AND PROCEDURAL HISTORY

On May 14, 2007, around 2:25 a.m., an officer observed Lee driving his vehicle approximately 60 miles an hour on a street with a posted speed limit of 35 miles an hour. The officer conducted a traffic stop. After approaching the vehicle, the officer "smelled the strong odor of an alcoholic beverage emitting from within the vehicle and noticed [Lee's] eyes were bloodshot and watery." The officer asked Lee if he had had anything to drink. Lee replied that he drank one shot of vodka at his bar. While speaking with Lee, the officer smelled the odor of alcohol on his breath. A check of Lee's license revealed that it had been suspended for his refusal to submit to a chemical test for driving under the influence on a prior occasion.

The officer requested that Lee perform a series of field sobriety tests, all of which Lee either failed or refused to execute. The officer arrested Lee for a violation of section 23152, subdivision (a), driving under the influence. The officer transported Lee to jail. Around 3:42 a.m., the officer observed a technician obtain a blood sample from Lee's right arm. The sample was sealed and placed in an evidence locker.[2] The officer revoked Lee's driver's license, which Lee surrendered to him. Lee requested an administrative per se hearing regarding the suspension of his driver's license.

At the administrative per se hearing, Lee stipulated that the officer had reasonable cause to believe Lee had been driving a motor vehicle in violation of section 23152 or 23153 and that he had been lawfully arrested. Thus, the only contested issue at the hearing was whether Lee had been driving with a BAC of 0.08 percent or higher. Among other exhibits, the Department introduced into evidence the officer's sworn DS-367 statement with attachments, including the arrest report (exhibit No. 1), and a San Bernardino County Sheriff's Department scientific investigation report regarding a test of

---

[2] The aforementioned facts are taken from attachments to the officer's sworn statement made on the Department's form No. DS-367, which was admitted at the administrative per se hearing as exhibit No. 1.

Lee's blood sample taken on the evening of his arrest, which reflected a BAC of 0.20 percent (exhibit No. 2). Exhibit No. 2 bears a centered heading reading, "San Bernardino County Sheriff's Department Scientific Investigation Division." Immediately underneath the heading is a right-aligned date reading, "Tuesday, June 19, 2007." Underneath that date, the exhibit reads, "Report on the Receipt and Examination for Ethyl Alcohol." The substance of the report indicates that analyst Beverly White "analyzed and reported" Lee's blood sample as showing a 0.20 percent BAC on May 30, 2007. The document bears a signed certification stamp dated June 19, 2007.[3]

Lee objected to the admission of exhibit No. 2 on the ground that it constituted inadmissible hearsay. Specifically, Lee contended that the document did not meet the qualification for the public records exception to the hearsay rule, which requires that the record be made at or near the time of the event, because the blood sample was tested on May 30, 2007, but the report was dated June 19, 2007. (Evid. Code, § 1280.) Lee noted that while the report reflected that the analyst had "analyzed and reported" the sample on May 30, 2007, "the report that has been submitted to the DMV is not the report of May 30, 2007, and so the report of May 30, 2007, is totally irrelevant and immaterial. The report that we have here is a report that was made on June 19th. Presumably the person that is certified at the bottom [as] the Crime Lab person, has certified that this is a true and exact copy and that the copying was done on June 19, so apparently this report was prepared and copied on the same date." Lee conceded that the Department "could have copied [the] report that was made on May 30th, which would have been admissible. However, [Evidence Code s]ection 1280 doesn't say because some report was made [at] some place [that was] at/or near the time of the event . . . [that] would be admissible, that any report prepared thereafter" reflecting the same information would be admissible.[4] Lee furthermore noted that "[w]e don't have [an] explanation as to why a new report was prepared." Lee cited and argued *Glatman v. Valverde* (2006) 146 Cal.App.4th 700 [53 Cal.Rptr.3d 319] (*Glatman*) in support of his position.

Before ruling on Lee's evidentiary objection, the hearing officer elected to take the testimony of the arresting officer. As to his cause for stopping the

---

[3] A portion of the certification is illegible. The Department indicates the certification reads, " 'I hereby certify that this is a true and correct copy of a document on file with the San Bernardino County Sheriff's Regional Forensic Laboratory under Laboratory Number' "; Lee indicates the certification reads, " 'is a true and current copy of a document on file.' "

[4] Evidence Code section 1280 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

vehicle, the officer's testimony was substantially in accord with his arrest report. Lee's counsel interrupted the officer's testimony to note that counsel had stipulated to any issues requiring the officer's testimony as to the remainder of the events of that evening. In fact, after the officer established the circumstances surrounding the preparation of his report (exhibit No. 1), Lee's counsel noted, "this was one of the best reports I'd ever read and I said I think [the officer] dotted all the I's and crossed all the T's and I can't figure out why [he is] here today."

The hearing officer then noted Lee's objection to exhibit No. 2, but overruled it and received it into evidence. Lee's counsel queried whether the hearing officer was admitting the exhibit under the official records exception to the hearsay rule or was admitting it despite finding that it was hearsay evidence coming under no evidentiary exception. If the latter, counsel argued that "no finding can be based entirely on hearsay. So . . . since the only record we have is this Forensic Alcohol Report, Exhibit #2 that if that report is hearsay, the finding of a blood alcohol above [0.08 percent] cannot be made entirely on hearsay. . . ."

In the hearing officer's findings of fact, she overruled Lee's objection to the admission of exhibit No. 2: "Counsel conten[ds] that the chemical test result does not meet the provisions of Evidence Code [section] 1280. More specifically, Counsel believe[s] that the document does not meet the 'at or near the time of the event' provision because the document's printed and certified date is after the analysis was completed. However, Counsel's argument is unpersuasive, the certified date on this document merely represents that the document is a certified copy of the original document on file with the lab. The blood sample was analyzed and reported on 05-30-2007. In this case, the information is the analyzed blood alcohol results from an arrest for driving under the influence after noticing the objective symptoms of intoxication and [Lee's] own admission of alcohol consumption, the chemical blood test being drawn within three hours from the time of driving. . . . The chemical test result does meet the foundational requirements detailed within Section 1280 of the Evidence Code, and is admissible in the Administrative proceeding." The hearing officer further found the officer's testimony was consistent with his report (exhibit No. 1). She found that the preponderance of the evidence supported the conclusion that Lee was driving with a BAC of 0.08 percent or higher and upheld the suspension of Lee's driving privileges.

Lee filed a petition for writ of mandate in the superior court seeking issuance of a writ revoking the Department's suspension of his license. Specifically, Lee averred that "[n]o evidence was presented at the Administrative Per Se hearing that [Lee's] blood alcohol concentration was over .08 or above and the finding by [the hearing officer] is based solely and totally on

inadmissible hearsay. Proper objection was made to the hearsay and it was unlawfully admitted." In his points and authorities, Lee reargued the position he took at the administrative hearing. The Department responded that the report detailing the results of Lee's blood test was admissible pursuant to the public records exception to the rule against hearsay evidence. (Evid. Code, § 1280.)

After a hearing on the matter, the court granted the petition for writ of mandate finding "that the report printed Tuesday, June 19, 2007, which reflected a blood alcohol content of .08 percent or greater, was not prepared at or near the time of the analysis, which was conducted on May 30, 2007. Additionally, the Court finds that the official records exception to the hearsay rule is not applicable to that document."

## DISCUSSION

■ In ruling on a petition for writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, whether the weight of the evidence supported the administrative decision. (*Lake v. Reed* (1997) 16 Cal.4th 448, 456 [65 Cal.Rptr.2d 860, 940 P.2d 311] (*Lake*).) On appeal, this court's role is to review the record to determine whether the trial court's findings are supported by substantial evidence, resolving all evidentiary conflicts and drawing all legitimate and reasonable inferences in favor of the trial court's decision. (*Id.* at p. 457.)

"We review for abuse of discretion the court's ruling the Forensic Report did not meet the timeliness requirement of [*Evidence Code*] section 1280, subdivision (b). 'A trial court has broad discretion in determining whether a party has established [the] foundational requirements [of *Evidence Code* section 1280]. [Citation.] Its ruling on admissibility "implies whatever finding of fact is prerequisite thereto; a separate or formal finding is, with exceptions not applicable here, unnecessary. [Citation.]" [Citation.] A reviewing court may overturn the trial court's exercise of discretion " 'only upon a clear showing of abuse.' " ' [Citation.]" (*Glatman, supra,* 146 Cal.App.4th at p. 703, fn. omitted.)[5]

■ Under the statutory procedure generally referred to as the "administrative per se" law, the Department must immediately suspend the driver's license of a person who is driving with a BAC of 0.08 percent or more. (§ 13353.2, subd. (a)(1).) The procedure is called "administrative per se"

---

[5] Insertions added by this court in brackets are italicized to distinguish them from the bracketed insertions appearing in the original material.

because it does not impose criminal penalties, but simply suspends or revokes a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain BAC, without additional evidence of impairment. (*Lake, supra*, 16 Cal.4th at p. 454, fn. 1.)

Under the administrative per se law, when a person is arrested for driving under the influence and is determined to have a prohibited BAC, the arresting officer or the Department serves the person with a notice of order of suspension. (§ 13353.2, subd. (b); *Lake, supra*, 16 Cal.4th at p. 455.) The notice states the reason and statutory grounds for the suspension and explains the driver's right to seek an administrative hearing. (§ 13353.2, subd. (c).) If the arresting officer serves the notice, the officer also confiscates the driver's license and issues a 30-day temporary license. (§ 13382, subd. (b); *Lake*, at p. 455.) The Department conducts an automatic internal review of the merits of the suspension or revocation. (§ 13557, subd. (a); *Lake*, at p. 455.)

Apart from the automatic internal review, the driver may request a review hearing at which the Department has the burden of proving by a preponderance of the evidence whether (1) the officer had reasonable cause to believe the driver was driving under the influence; (2) the driver was arrested; and (3) the driver was driving with a BAC of 0.08 percent or higher. (§§ 13557, subd. (b)(1), (2), 13558, subd. (c)(2); *Lake, supra*, 16 Cal.4th at pp. 455–456; *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 156 [8 Cal.Rptr.3d 48, 81 P.3d 975] (*MacDonald*).)

 " '[T]he administrative per se laws are intended to provide an efficient mechanism whereby those persons who drive after consuming dangerous amounts of alcohol can have their driver's licenses quickly suspended so as to ensure they will not endanger the public by continuing to drive. [Citation.]' [Citation.]" (*MacDonald, supra*, 32 Cal.4th at p. 159.) One aspect of the accelerated procedures of the administrative per se laws "is a slight relaxation of the rules of evidence applicable to an administrative per se review hearing." (*Lake, supra*, 16 Cal.4th at p. 462.)

Government Code section 11513 addresses the admissibility of evidence in administrative hearings: "The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (Gov. Code, § 11513, subd. (c); see *MacDonald, supra*, 32 Cal.4th at p. 156.) It furthermore permits the use of hearsay evidence "for the purpose of supplementing or explaining other evidence but over timely objection shall

not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. An objection is timely if made before submission of the case or on reconsideration." (Gov. Code, § 11513, subd. (d); see *Lake, supra*, 16 Cal.4th at p. 458.)

In *People v. Martinez* (2000) 22 Cal.4th 106 [91 Cal.Rptr.2d 687, 990 P.2d 563] (*Martinez*), at a bifurcated bench trial, the People sought to establish the identity of the defendant relative to proving the truth of several prior prison term allegations. To that end, the People offered uncertified computer printouts of the defendant's criminal history that a paralegal in the office generated on the day he testified. (*Id.* at p. 112.) The defendant objected to admission of the documents on hearsay grounds. The People responded that the exhibits were admissible under the official records exception to the hearsay rule. The trial court admitted the exhibits and found the prior prison allegations true. (*Id.* at p. 113.) The defendant appealed, contending the court erred in admitting the exhibits pursuant to the official records exception to the hearsay rule because the printouts were not made at or near the time of the act, condition, or event. (*Id.* at pp. 113, 126–127.)

The appellate court concluded that the trial court did not abuse its discretion in determining that the California Law Enforcement Telecommunications System (CLETS) printouts were admissible under the official records exception. (*Martinez, supra*, 22 Cal.4th at p. 126.) The court held that the Department of Justice's "entry into CLETS of criminal information it receives does not depend on memory, but simply involves a transfer of information from one form of storage—the disposition reports—to another—the CLETS database. Under these circumstances, the Department's statutory recording duties are sufficiently specific to support the trial court's discretionary determination that the CLETS printout met the timeliness requirement of the official records exception. [Citations.]" (*Id.* at p. 128.)

More recently, the court in *Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210 [98 Cal.Rptr.3d 459] (*Miyamoto*), addressed the same issue. A lab analyzed the driver's blood samples on March 23, 2007. In a lab report dated March 26, 2007, the technician reported the driver's BAC as 0.16 percent. (*Id.* at p. 1213.) The technician furthermore noted that " 'the recording of the analysis results was done at the time of the analysis. I further certify that the transfer of data for reporting purposes was performed electronically in accord with the laboratory's policies and procedures.' " (*Ibid.*) The report was printed on April 26, 2007. (*Ibid.*) At the administrative per se hearing, the hearing officer admitted the lab report over the driver's objections and upheld suspension of his driver's license. (*Id.* at pp. 1214–1215.) The superior court granted the driver's petition for writ of mandate concluding that the lab report had been improperly admitted because

the Department had failed to establish that the report of the blood analysis had been recorded at or near the time of the analysis. (*Id.* at pp. 1215–1216.)

On appeal, the court reversed the superior court holding that the lab report was admissible because it unambiguously indicated that the results of the blood analysis were reported at the time it was conducted: "That the results were later retrieved and incorporated into a formal written report, that the report was later reviewed by a second employee of the lab, that the report was later certified by the analyst who ran the test, and that the report of all these events was printed at some later date for use at the DMV hearing does not alter the fact that the test results were recorded at the time the test was performed." (*Miyamoto, supra*, 176 Cal.App.4th at p. 1221, fn. omitted.) "[B]ecause the results were recorded electronically at the time of the analysis, there was no danger of inaccuracy by lapse of memory since the preparation of the Lab Report did not depend on memory, but simply involved the transfer of information from the Lab's electronic database to the written report." (*Ibid.*)

Here, the Department contends that the San Bernardino County Sheriff's Department scientific investigation report was simply a printout of the results of the blood test which was both analyzed and reported on May 30, 2007. Thus, the June 19, 2007, date on the report is simply the date it was printed or "published," not the date the test was reported; hence, the report was admissible pursuant to the public records exception to the hearsay rule because the report was made on the same date the test was conducted. (Evid. Code, § 1280.) We agree.

The hearing officer specifically found that "[t]he blood sample was ana-lyzed and reported on 05-30-2007. . . . The chemical test result does meet the foundational requirements detailed within Section 1280 of the Evidence Code, and is admissible in the Administrative proceeding." The record supports this determination. As noted above, the extract of Beverly White's analysis of the blood sample contained in the report specifically stated that the sample was "analyzed and reported" on May 30, 2007. While the superior court's finding "that the report *printed* Tuesday, June 19, 2007, which reflected a blood alcohol content of .08 percent or greater, was not prepared at or near the time of the analysis, which was conducted on May 30, 2007" (italics added), is no doubt true, it does not mean that the blood analysis itself was not *reported* on May 30, 2007.

Moreover, to the extent this "report" was generated on June 19, 2007, it was obviously a transfer of information from one form of storage (a computer database or journal-type entry) to another. The document reflected that analyst Beverly White "analyzed *and reported*" Lee's BAC as 0.20 percent

on May 30, 2007. (Italics added.) The use of the term *reported* in the phrase "analyzed and reported" would be mere surplusage unless the results of the analysis were actually recorded on the same date. The June 19, 2007, date appears to be the date the San Bernardino County Sheriff's Department retrieved the results of the analyst's test and report of Lee's blood sample and certified that retrieval in a subsequently produced report. Thus, it does not suffer from a weakness of evidence, which depended on an individual's memory, which could lapse over the course of several weeks because it was merely an extract or abstract of a report previously prepared. (*Martinez, supra*, 22 Cal.4th at p. 128; *Miyamoto, supra*, 176 Cal.App.4th at p. 1221.)

Lee cites and exposits *Downer v. Zolin* (1995) 34 Cal.App.4th 578 [40 Cal.Rptr.2d 288] (*Downer*) (disapproved in *Lake, supra*, 16 Cal.4th 448, to the extent it would require lab reports to be sworn), *Glatman, supra*, 146 Cal.App.4th 700, and *Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974 [91 Cal.Rptr.3d 792] (*Molenda*), for the proposition that forensic reports that fail to establish they were completed at or near the time of testing are absolutely inadmissible at administrative per se hearings. We find those cases distinguishable and, therefore, unsupportive of Lee's position. In *Downer*, the chemical test report of the plaintiff's urine sample reflected that it was tested on two different dates, but failed to indicate the date it was reported. (*Downer*, at pp. 580, 583.) Here, the report explicitly states that Lee's blood sample was "analyzed and reported" on May 30, 2007.

In *Glatman, supra*, 146 Cal.App.4th 700, two separate forensic analysts tested the plaintiff's blood samples, but neither reported the results until several days thereafter. (*Id.* at p. 702.) Over the plaintiff's hearsay objection, the report was admitted at the administrative per se hearing. (*Id.* at pp. 702–703.) The hearing officer upheld the suspension of the plaintiff's license, which the trial court overturned on petition for writ of mandate. (*Id.* at p. 703.) On appeal, the court noted, "Although appellants assert the analysts promptly entered the test results into a computer database, the record contains no support for this assertion." (*Id.* at p. 704.) *Glatman* distinguished *Martinez* in that the only evidence in the record of when the analysts recorded their test results showed that it was several days after the tests were performed; thus, "the instant case presents a 'danger of inaccuracy by lapse of memory.' [Citation.]" (*Glatman*, at p. 704.) Contrary to *Glatman*, the record here reflects, again, that Lee's blood sample was "analyzed *and reported*" on May 30, 2007. (Italics added.) Thus, the fact that the test results were rereported or subsequently "published" on June 19, 2007, does not implicate any " 'danger of inaccuracy by lapse of memory.' " (*Ibid.*)

Finally, *Molenda, supra*, 172 Cal.App.4th 974, is distinguishable. There, the Department contended that the laboratory report was admissible. (*Id.* at

p. 988.) However, the court concluded that "there is no evidence the test result was entered into a computer database or recorded in any manner prior to the preparation of the written report, which was done one week after the analysis was completed." (*Id.* at p. 991.) Indeed, the hearing officer determined that the report was made seven days after the test, but determined that was temporally proximate enough to adhere to the requirements of Evidence Code section 1280. (*Molenda,* at pp. 984–985.) Here, again, there was evidence that the test results were recorded on the day the test was completed.

█ We find the superior court's conclusion that the laboratory report was inadmissible was an abuse of discretion and, therefore, reverse the judgment.

## DISPOSITION

The judgment is reversed. Appellant is awarded his costs on appeal (Gov. Code, § 6103.5).

Ramirez, P. J., and McKinster, J., concurred.