[No. H032196. Sixth Dist. Mar. 27, 2009.]

SANDRA LORRAINE MOLENDA, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

976

978

**COUNSEL**

Edmund G. Brown, Jr., Attorney General, David Chaney, Chief Assistant Attorney General, Jacob A. Appelsmith, Assistant Attorney General, Miguel A. Neri, Fiel D. Tigno and Robert Andrew Harkness, Deputy Attorneys General, for Defendant and Appellant.

Page, Salisbury & Dudley and Arthur Dudley for Plaintiff and Respondent.

## Opinion

**McADAMS, J.**—After respondent Sandra Lorraine Molenda was arrested for driving under the influence of alcohol, the arresting officer issued an administrative order suspending her driving privilege. After an administrative hearing, the Department of Motor Vehicles (DMV) upheld the suspension of Molenda's driving privilege. Molenda petitioned the superior court for a writ of mandate, challenging the DMV's order on the ground that the forensic laboratory report of her blood test results, which the DMV used to prove that Molenda was under the influence, was hearsay and did not meet the requirements of Evidence Code section 1280, the public employee records exception to the hearsay rule. The court held that the laboratory report of the blood test results did not meet the requirements of the public employee records exception to the hearsay rule because the report was not "made at or near the time of" the testing as required by Evidence Code section 1280, subdivision (b). The court also excluded the evidence of Molenda's preliminary alcohol screening (PAS) test results because the foundational facts necessary for their admission had not been established. The court concluded that there was insufficient evidence to support the DMV's finding that Molenda was driving with a blood-alcohol level of 0.08 percent or more and granted the writ.

The DMV appeals, arguing that the trial court erred in excluding the lab report of Molenda's blood test results because the report was admissible under Vehicle Code section 23612, subdivision (g)(2), which the DMV contends prevails over both Evidence Code section 1280 and Government Code section 11513, subdivision (d), the statute that governs the admissibility of hearsay evidence in administrative proceedings. The DMV also argues that the court erred when it refused to consider the PAS test results. We hold that the blood test results were not admissible under Evidence Code section 1280 or Vehicle Code section 23612 and that under the circumstances of this case, the DMV may not rely on the presumptions in Evidence Code section 664 to establish the foundation necessary for the admission of the PAS test results. We therefore conclude the trial court did not abuse its discretion when it excluded the lab report of the blood test results or when it excluded the breath test results that were obtained using a PAS device. We shall therefore affirm the trial court's judgment.

### Facts

On August 17, 2006,[1] California Highway Patrol (CHP) officers responded to the scene of a single-vehicle rollover accident near the entrance ramp from State Park Drive to southbound Highway 1 in Santa Cruz County.

---

[1] All further date references are to the year 2006.

Officer Geddes was the first officer on the scene. When he arrived, he found a Dodge Durango on its wheels in the median between the on-ramp and the highway. Molenda, who was alone in the car, was seated in the driver's seat, trying to start the engine. Because of the damage to the Durango, Officer Geddes instructed Molenda to get out of the car through the rear door. Officer Geddes observed signs of intoxication and smelled a strong odor of alcohol on Molenda.

Officers Barry and Lloyd were dispatched at approximately 11:35 p.m.; they arrived on the scene at either 11:40 or 11:48 p.m. When they arrived, Molenda was outside the car. Molenda admitted to Officer Barry that she had been driving and that she had lost control and crashed. Officer Barry observed signs of intoxication and smelled a strong odor of alcohol on her breath. Molenda also admitted drinking wine with dinner. Officer Barry conducted field sobriety tests, which Molenda failed. He tested Molenda with a PAS device at 12:01 and 12:03 a.m., which produced readings of 0.183 percent and 0.172 percent blood-alcohol content. Officer Barry determined that Molenda had been driving under the influence (DUI) of an alcoholic beverage and arrested her. Officer Barry issued an administrative order suspending Molenda's driver's license on the ground that she had 0.08 percent or more of alcohol in her blood and Molenda surrendered her license to him at the scene.

Molenda was transported by ambulance to Dominican Hospital. Officer Barry advised her of the implied consent law and she agreed to provide a blood sample. Molenda's blood was drawn by a hospital lab technician at 12:47 a.m. on August 18th. Officer Barry placed the blood sample "into CHP evidence for analysis by the DOJ [Department of Justice] crime lab." Molenda was subsequently transported and booked into jail.

The Department of Justice (DOJ) Bureau of Forensic Services laboratory (Lab) received the blood sample on August 21st. The Lab completed its analysis on September 1st; its report was dated September 8th. According to the Lab's report, Molenda's blood-alcohol level was "0.17%."

PROCEDURAL HISTORY

I. *Administrative Per Se Hearing*

Molenda requested an administrative hearing regarding the suspension of her driver's license. The hearing was conducted by telephone on November 20th. Molenda was represented by counsel, but did not appear at the hearing.

Officer Barry testified regarding his observations at the scene. With regard to the blood-alcohol testing, Officer Barry testified that he administered the

PAS test and that it showed the presence of alcohol. The hearing officer did not ask Officer Barry for the numerical results of the PAS test. Officer Barry also stated that he arrested Molenda and that after he admonished her regarding the implied consent law, she chose a blood test.

The hearing officer introduced and received the following documents into evidence: Officer Barry's sworn statement on a DMV DS 367 form, Officer Barry's unsworn investigation report on CHP forms, the suspension order, the declaration of the lab technician who took the blood sample, the Lab report, an unsworn traffic collision report prepared by Officer Lloyd, the notice of the hearing, a temporary license issued to Molenda, the DMV's request for discovery, and Molenda's driving record.

Molenda's counsel objected to any evidence of Molenda's blood-alcohol level as a result of the testing with the PAS device on the grounds that there was no foundation to support the accuracy of the readings and under the authority of *Coniglio v. Department of Motor Vehicles* (1995) 39 Cal.App.4th 666, 677–681 [46 Cal.Rptr.2d 123] (*Coniglio*) which held that PAS devices are not subject to the compliance standards set forth in California Code of Regulations, title 17, sections 1215–1222.2 (hereafter Title 17). The hearing officer sustained both objections and stated that he would not consider the PAS test results for numerical proof of Molenda's blood-alcohol level. However, he did consider the PAS test results to the extent that they confirmed the presence of alcohol and supported the officer's conclusion that Molenda was intoxicated.

Citing *Downer v. Zolin* (1995) 34 Cal.App.4th 578 [40 Cal.Rptr.2d 288] (*Downer*), disapproved on other grounds in *Lake v. Reed* (1997) 16 Cal.4th 448, 465, footnote 10 [65 Cal.Rptr.2d 860 940 P.2d 311] (*Lake*), Molenda also objected to the admissibility and sufficiency of the blood test results. Her counsel argued that since the report was completed one week after the Lab tested the blood sample, the report did not meet one of the foundational requirements of Evidence Code section 1280, the public employee records exception to the hearsay rule, since the report was not prepared "at or near the time" of the reported event. (Evid. Code, § 1280, subd. (b).) The hearing officer took the objection under submission.

The hearing officer determined that the blood test results were admissible. With regard to Molenda's objection, the hearing officer held that this case was distinguishable from *Downer* because the report in *Downer* was not dated and thus did not indicate when it was prepared, while the report in this case was dated. The hearing officer noted that no evidence had been "submitted to show that the blood result is invalid" or that "the chain of custody was broken" and concluded that "seven days is at or near the time of

the analysis." The hearing officer upheld the four-month suspension of Molenda's driver's license.

## II. *Petition for Writ of Mandate in the Superior Court*

Molenda petitioned the superior court for a writ of mandate to set aside the suspension. In her petition, Molenda argued that the Lab report was not admissible under the public employee records exception to the hearsay rule (Evid. Code, § 1280) because it was not prepared at or near the time of the testing and consequently, there was no admissible evidence that established her blood-alcohol level.

The DMV opposed the petition, arguing that the admissibility and sufficiency of the Lab report was governed by Vehicle Code section 23612, subdivision (g)(2), which as the more particular statute prevails over both Evidence Code section 1280 and Government Code section 11513. The DMV also argued that even if the Lab report was not admissible, the PAS test results were admissible and sufficient by themselves to establish Molenda's blood-alcohol level.

The trial court excluded the PAS test results because the foundational facts necessary for their admission had not been established. Citing *Glatman v. Valverde* (2006) 146 Cal.App.4th 700 [53 Cal.Rptr.3d 319] (*Glatman*), the court also held that the delay in preparing the report of the blood test results rendered the Lab report inadmissible. The court therefore concluded that there was insufficient evidence to support the DMV's finding that Molenda was driving with a blood-alcohol level of 0.08 percent or more. The court granted the writ, ordered the DMV to set aside its order suspending Molenda's license, and ordered that Molenda's driving privilege be reinstated. The DMV appeals.

## DISCUSSION

In a DMV administrative hearing, the DMV is required to suspend a person's driving privilege if it determines by a preponderance of the evidence that (1) a peace officer had reasonable cause to believe that the person had been driving a motor vehicle under the influence of alcohol or drugs, (2) the person was placed under arrest, and (3) the person was driving with " '0.08 percent or more, by weight, of alcohol in his or her blood.' " (*Lake, supra,* 16 Cal.4th at p. 456.) The DMV bears the burden of proof. (*Id.* at p. 455.)

Molenda contends that there was insufficient evidence to support a finding that she was driving with a blood-alcohol level over 0.08 percent, since the Lab report was inadmissible hearsay and the hearing officer had ruled that the

PAS test results were inadmissible. The DMV contends that the Lab report, although hearsay, was admissible under Vehicle Code section 23612, subdivision (g)(2), and was sufficient by itself to support the DMV's finding that Molenda was driving with a blood-alcohol level in excess of 0.08 percent. The DMV also contends that even if the Lab report was inadmissible, the PAS test results were admissible and sufficient by themselves to support the DMV's finding.

## I. *Standards of Review*

Generally, when ruling on a petition for a writ of mandate challenging an order suspending a driver's license, a trial court exercises its independent judgment to determine " ' "whether the weight of the evidence supported the administrative decision." ' " (*Lake, supra*, 16 Cal.4th at pp. 456–457.) On appeal, we review the record to determine whether the trial court's findings are supported by substantial evidence. (*Id.* at p. 457.)

However, when the appellant challenges a court's evidentiary ruling, a different standard of review applies. Generally, we review the trial court's rulings regarding the admissibility of evidence under the deferential abuse of discretion standard. (*City of Ripon v. Sweetin* (2002) 100 Cal.App.4th 887, 900 [122 Cal.Rptr.2d 802].) "[T]he appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered." (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598 [153 Cal.Rptr. 423, 591 P.2d 911].) Appellate courts will disturb discretionary trial court rulings only upon a showing of a clear case of abuse and a miscarriage of justice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].)

■ Specifically, we review the trial court's ruling that the Lab report did not meet the requirements of Evidence Code section 1280 for an abuse of discretion. "A trial court has broad discretion in determining whether a party has established [the] foundational requirements [of Evidence Code section 1280]. [Citation.] Its ruling on admissibility 'implies whatever finding of fact is prerequisite thereto; a separate or formal finding is, with exceptions not applicable here, unnecessary. (Evid. Code, § 402, subd. (c).)' [Citation.] A reviewing court may overturn the trial court's exercise of discretion ' "only upon a clear showing of abuse." ' " (*People v. Martinez* (2000) 22 Cal.4th 106, 120 [91 Cal.Rptr.2d 687, 990 P.2d 563] (*Martinez*), citing *People v. Williams* (1997) 16 Cal.4th 153, 196 [66 Cal.Rptr.2d 123, 940 P.2d 710].)

To the extent that the issues presented here require us to interpret one or more statutes, we apply the de novo standard of review. Since the interpretation of a statute presents questions of law, appellate courts independently

determine the meaning of a statute and are not bound by the trial court's interpretation. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *In re Clarissa H.* (2003) 105 Cal.App.4th 120, 125 [129 Cal.Rptr.2d 223].)

II. *Admissibility of Forensic Lab Report Regarding Blood Test Results*

 A. *General Rules Governing Admissibility of Evidence in DMV Proceedings*

The rules governing the evidence available for use in DMV administrative per se hearings "are set forth in division 6, chapter 3, article 3 of the Vehicle Code, commencing with section 14100. (§ 14100, subd. (a).) Two provisions are especially relevant. First, [Vehicle Code] section 14104.7 states in pertinent part: 'At any hearing, the department shall consider its official records and may receive *sworn testimony*.' (Italics added.) Second, for all matters not specifically covered by . . . the Vehicle Code [provisions, Vehicle Code] section 14112 incorporates the provisions of the Administrative Procedures Act governing administrative hearings generally. (Gov. Code, § 11500 et seq.; see also, *id.*, § 11501, subd. (b)(41) [Administrative Procedures Act applies to DMV].)" (*Lake, supra*, 16 Cal.4th at p. 458.)

■ Government Code section 11513 addresses the admissibility of evidence generally in administrative hearings. (*Lake, supra*, 16 Cal.4th at p. 458.) It provides in relevant part: "(c) The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions. [¶] (d) Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but . . . shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (Gov. Code, § 11513, subds. (c), (d).) Under subdivision (d) of the statute, a forensic lab report, although hearsay, may be used to supplement or explain other evidence. But it shall not be sufficient in itself to support a finding unless it would be admissible over a hearsay objection in a civil action. Thus, to support a finding by itself, the forensic lab report must fall within an exception to the hearsay rule.

■ In *Lake*, the California Supreme Court held that despite their hearsay nature, blood and urine test reports prepared by government forensic laboratories are admissible in DMV administrative review hearings as official records under the public employee records exception to the hearsay rule,

provided they meet the requirements of Evidence Code section 1280, which sets forth the exception. (*Lake, supra,* 16 Cal.4th at p. 467.) This is true even when the forensic reports are not certified under penalty of perjury.[2] (16 Cal.4th at p. 467.)

Evidence Code section 1280 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness." As this court stated in *Furman v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 416 [122 Cal.Rptr.2d 520], to come within the hearsay exception in Evidence Code section 1280, a forensic laboratory report must "(1) be a record made by a public employee with a duty to perform, and record the result of, a forensic alcohol analysis, (2) have been made at or near the time of completion of the analysis, and (3) have been made under circumstances that reflected that it was trustworthy." (*Furman,* at p. 421.)

The DMV acknowledges that to be sufficient by itself to support a finding regarding a licensee's blood-alcohol level, a forensic lab report must meet the requirements of an exception to the hearsay rule and that, ordinarily, that exception is found in Evidence Code section 1280, the public employee records exception. The DMV contends, however, that the Lab report was admissible and sufficient by itself to support the hearing officer's finding regarding Molenda's blood-alcohol level under Vehicle Code section 23612, subdivision (g)(2) and that consequently, the court erred in excluding the report under Evidence Code section 1280.

Vehicle Code section 23612, subdivision (g) provides in relevant part: "(1) . . . If the person submitted to a blood or urine test, the peace officer shall forward the results immediately to the appropriate forensic laboratory. The forensic laboratory shall forward the results of the chemical tests to the department within 15 calendar days of the date of the arrest.

---

[2] The court in *Lake* explained, "A report prepared by a forensic laboratory properly licensed by the State of California (see tit. 17, Cal. Code Regs., § 1215 et seq.), though unsworn, 'is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs' (Gov. Code, § 11513, subd. (c)), and the admission of such evidence will facilitate the immediate removal of dangerous drivers from the road. The Legislature could reasonably have concluded that the formality of having forensic alcohol analysts swear under penalty of perjury to the accuracy of their test results, while unquestionably providing an additional layer of confidence the [blood-alcohol] evidence is correct, could be dispensed with in administrative hearings at which no criminal penalties will be imposed." (*Lake, supra,* 16 Cal.4th at p. 467.)

[¶] (2)(A) *Notwithstanding any other provision of law*, a document containing data prepared and maintained in the governmental forensic laboratory computerized database system that is electronically transmitted or retrieved through public or private computer networks to or by the department *is the best available evidence of the chemical test results in all administrative proceedings conducted by the department.* In addition, any other official record that is maintained in the governmental forensic laboratory, relates to a chemical test analysis prepared and maintained in the governmental forensic laboratory computerized database system, and is electronically transmitted and retrieved through a public or private computer network to or by the department is admissible as evidence in the department's administrative proceedings. In order to be admissible as evidence in administrative proceedings, a document described in this subparagraph shall bear a certification by the employee of the department who retrieved the document certifying that the information was received or retrieved directly from the computerized database system of a governmental forensic laboratory and that the document accurately reflects the data received or retrieved." (Italics added.) The word "department" in the statute refers to the DMV. (Veh. Code, § 290.)

### B. *Admissibility of Forensic Lab Blood Test Results Under Evidence Code Section 1280*

Molenda contends the trial court did not abuse its discretion when it excluded the Lab report of the blood test results because the Lab's report was not completed "at or near the time of the act, condition or event" reported (the analysis of the blood sample) and therefore did not comply with the requirement for admission as an official record under Evidence Code section 1280, subdivision (b). Without expressly conceding the point, the DMV seems to agree that the report was not admissible under Evidence Code section 1280.

■ " 'How soon a writing must be made after the act or event is a matter of degree and calls for the exercise of reasonable judgment on the part of the trial judge.' " (*Martinez, supra,* 22 Cal.4th at p. 128, fn. 7, italics omitted.) "[T]he timeliness requirement 'is not to be judged . . . by arbitrary or artificial time limits, measured by hours or days or even weeks.' [Citation.] Rather, 'account must be taken of practical considerations,' including 'the nature of the information recorded' and 'the immutable reliability of the sources from which [the information was] drawn.' [Citation.] 'Whether an entry made subsequent to the transaction has been made within a sufficient time to render it within the [hearsay] exception depends upon whether the time span between the transaction and the entry was so great as to suggest *a danger of inaccuracy by lapse of memory.*' " (*Id.* at p. 128, italics added.) In *Martinez,* the court held that the DOJ's "entry into CLETS [California Law Enforcement Telecommunications System] of criminal information it receives does

not depend on memory, but simply involves a transfer of information from one form of storage—the disposition reports—to another—the CLETS database. Under these circumstances, the [DOJ]'s statutory recording duties are sufficiently specific to support the trial court's discretionary determination that the CLETS printout met the timeliness requirement of the official records exception." (*Ibid.*)

In *Downer*, a motorist's urine sample was analyzed twice, by two different analysts in the government forensic lab. There were no signatures near the statement of certification and there was a factual issue regarding whether the analysts' report was dated. (*Downer, supra*, 34 Cal.App.4th at p. 580.) The appellate court concluded that the superior court had not erred when it found that the report was undated and observed that there was "no other information which the trial court could rely on to deduce its date of preparation." (*Id.* at p. 582.) The court held that the "absence of evidence showing the report was made at or near the time of the reported event renders this report inadmissible hearsay under Evidence Code section 1280." (*Ibid.*)

In a footnote, the court discussed the evidence relating to the factual question whether the report was dated and concluded, "we cannot say the court's factual finding was clearly erroneous. But even if it were, a report prepared nearly a week after the forensic tests were completed does not fall within the statutory requirement that the report be prepared 'at or near the time' of the reported event. (Evid. Code, § 1280.)" (*Downer, supra*, 34 Cal.App.4th at p. 582, fn. 5.) Since the court upheld the trial court's finding that the report was undated, the latter conclusion is dictum.

In *Glatman*, which was decided after the administrative hearing in this case, the motorist's blood sample was analyzed on July 25, 2005, and analyzed a second time a day later. (*Glatman, supra*, 146 Cal.App.4th at p. 702.) Both analysts signed the report, which was dated August 1, 2005, one week after the first test was done. (*Ibid.*) The DMV argued that the analysts entered the test results into the lab's computer database shortly after completing each test and that the preparation of the report one week later simply involved retrieving the data from the database. (*Glatman, supra*, 146 Cal.App.4th at p. 703.) The appellate court disagreed and observed that the record was silent regarding the procedures that the analysts used to record their test results and that there was no evidence that the test results were recorded in a computer database or anywhere else before the date the report was prepared. (*Id.* at p. 704.) The court held that the case presented a " 'danger of inaccuracy by lapse of memory' " and observed that "memory is subject to erosion with every day that passes." (*Id.* at pp. 704, 705.) The court concluded that the trial court had not abused its discretion in finding that the forensic report was not prepared at or near the time of the recorded event. (*Id.* at p. 706.)

In our view, this case is distinguishable from *Martinez* and similar to *Glatman*. As in *Glatman*, there is no evidence the test result was entered into a computer database or recorded in any manner prior to the preparation of the written report, which was done one week after the analysis was completed. The report states that "[i]nformation regarding the examination and conclusions are entered into and are maintained within the DOJ Laboratory Information Management System (LIMS) database." However, it does not state when the test results were entered into the database. Moreover, the record is silent regarding the lab's policies and procedures for recording test results.

■ Furthermore, we cannot presume the test results were timely recorded under Evidence Code section 664,[3] the presumption that an official duty has been regularly performed, since no statute or regulation imposes a timeliness duty with regard to the recording of test results that could be presumed to have been met. (*Glatman, supra,* 146 Cal.App.4th at p. 705.)

■ For these reasons, we conclude that the trial court did not abuse its discretion when it held that the Lab report was inadmissible because it was not prepared at or near the time of the recorded event, as required by Evidence Code section 1280, subdivision (b).

C. *Admissibility of Blood Test Results Under Vehicle Code Section 23612*

1. *The Parties' Contentions Regarding Vehicle Code Section 23612*

The DMV argues that by adopting Vehicle Code section 23612, "the Legislature intended to clear away any obstacles presented by Evidence Code section 1280 so that the DOJ lab reports would be sufficient in DMV administrative proceedings to establish a driver's [blood-alcohol level]." It contends that the only reason for adding subdivision (g)(2) to Vehicle Code section 23612 "was to ensure that the DOJ lab reports would be *sufficient* to support findings in DMV administrative proceedings under Government Code section 11513(d), notwithstanding the foundational requirements of Evidence Code section 1280." The DMV asserts that the only requirement that the Legislature imposed for the use of a forensic lab report by the DMV is that the report bear a certification from the DMV employee who retrieved the report from the DOJ's computer as set forth in Vehicle Code section 23612, subdivision (g)(2)(A). The DMV also contends that that requirement was met in this case and that the Lab report was therefore both admissible and

---

[3] Evidence Code section 664 provides in relevant part: "It is presumed that official duty has been regularly performed."

sufficient to support the hearing officer's finding that Molenda's blood-alcohol level exceeded the legal limit.

At oral argument, the DMV argued that Vehicle Code section 23612, subdivision (g)(2) prevails over Evidence Code section 1280, Government Code section 11513, and the entire Evidence Code.

Molenda argues that Vehicle Code section 23612 was designed "to avoid any 'best evidence' objections to the admission of laboratory reports that are already in a computerized data base" and is not "any type of exception to the official records exception to the hearsay rule in section 1280 of the Evidence Code . . . ." She contends that Vehicle Code section 23612, subdivision (g)(2) merely pertains to the admission of a certain type of evidence at an administrative hearing and does not state rules pertaining to the sufficiency of that evidence to support an administrative finding.

## 2. *Rules of Statutory Construction*

As noted above, the interpretation of statutes presents questions of law that are subject to our independent review on appeal. (*In re Clarissa H., supra*, 105 Cal.App.4th at p. 125.)

■ " 'A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].) First and foremost, we look for that purpose in the actual language of the statute. (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404].) If the meaning is without ambiguity, doubt, or uncertainty, then the language controls. (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557].) If the meaning of the words is not clear, we may refer to various extrinsic aids, including the history of the statute, to determine the intent of the Legislature. (*Kaiser Foundation Health Plan, Inc. v. Lifeguard, Inc.* (1993) 18 Cal.App.4th 1753, 1762 [23 Cal.Rptr.2d 235].) Finally, if neither the words of the statute nor its legislative history reveals a clear meaning, we apply reason and practicality, and interpret the statute in accord with common sense and justice, and to avoid an absurd result. (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1240 [8 Cal.Rptr.2d 298].)

■ When interpreting a statute, we consider the statutory language in the context of the entire statute and the statutory scheme of which it is a part. (*Phelps v. Stostad, supra*, 16 Cal.4th at p. 32.) We give effect to statutes according to the usual, ordinary import of the language employed in framing

them. If possible, we give significance to every word, phrase, sentence and part of an act pursuant to its legislative purpose. (*Ibid.*) " ' " 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*Ibid.*)

Finally, a "more specific statute controls over a more general one" touching on the same subject. (*Lake, supra,* 16 Cal.4th at p. 464; see *Department of Industrial Relations v. Fidelity Roof Co.* (1997) 60 Cal.App.4th 411, 426 [70 Cal.Rptr.2d 465].)

### 3. *Analysis*

Vehicle Code section 23612 is located in article 1, chapter 4 of division 11.5 of the Vehicle Code, which sets forth general provisions related to procedures for handling DUI cases. It is part of California's implied consent law. (*People v. Wilson* (2003) 114 Cal.App.4th 953, 960 [8 Cal.Rptr.3d 167] (*Wilson*).) The immediate purposes of the implied consent law are (1) " 'to obtain the *best* evidence of blood alcohol content at the time of the arrest of a person who is reasonably believed to be driving while intoxicated' " before the evidence becomes unavailable due to the passage of time (*ibid.*) and (2) to provide incentive for voluntary submission to chemical tests thereby eliminating the potential for violence inherent in forcible testing (*Hernandez v. Department of Motor Vehicles* (1981) 30 Cal.3d 70, 77 [177 Cal.Rptr. 566, 634 P.2d 917]). The ultimate purpose of the law is to deter motorists from drinking and driving. (*Hughey v. Department of Motor Vehicles* (1991) 235 Cal.App.3d 752, 757 [1 Cal.Rptr.2d 115].)

Based on the plain language of the statute, subdivision (g)(2)(A) of Vehicle Code section 23612 has a narrow purpose, which is to permit the electronic transmission or retrieval of information regarding blood-alcohol testing done by governmental forensic laboratories directly from the laboratories' databases to the DMV. Subdivision (g)(1) of the statute requires government forensic labs to forward the results of blood-alcohol testing to the DMV. Subdivision (g)(2) of the statute applies to a narrow group of documents. It refers to two types of documents: (1) documents "containing data prepared and maintained in the governmental forensic laboratory computerized database system" and (2) "any other official record that is maintained in the governmental forensic laboratory [that] relates to a chemical test analysis prepared and maintained in the governmental forensic laboratory computerized database system." (Veh. Code, § 23612, subd. (g)(2)(A).) Subdivision (g)(2) of section 23612 contains another limitation. It applies to documents

and records that are "electronically transmitted or retrieved through public or private computer networks to or by the" DMV. (Veh. Code, § 23612, subd. (g)(2)(A).) Such documents and records are admissible in DMV administrative proceedings if certified by the employee of the DMV who retrieved the document that the information was "received or retrieved directly from" the lab's computerized database system and that it "accurately reflects the data received or retrieved" from the database. (Veh. Code, § 23612, subd. (g)(2)(A).) The clear import of these provisions is to permit government forensic laboratories to send documents to the DMV electronically and to permit the DMV to receive or retrieve information regarding blood-alcohol testing done by governmental forensic laboratories directly from the laboratories' computerized databases.

■ Moreover, the statute provides that a document that contains data that was "prepared and maintained" in the lab's "computerized database system, and is electronically transmitted or retrieved" through computer networks is the "best available evidence" of the lab's chemical test results in an administrative proceeding conducted by the DMV. (Veh. Code, § 23612, subd. (g)(2)(A).) In our view, the phrase "best available evidence" refers to the admissibility of the evidence under the secondary evidence rule,[4] which provides that the "content of a writing may be proved by *otherwise admissible* secondary evidence" unless the court determines either that "[a] genuine dispute exists concerning material terms of the writing and justice requires the exclusion" or that "[a]dmission of the secondary evidence would be unfair." (Evid. Code, § 1521, subd. (a), italics added.)

■ The secondary evidence rule permits the introduction of " 'otherwise admissible secondary evidence' to prove the contents of a writing." (*Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1108 [27 Cal.Rptr.3d 741].) "It does not excuse the proponent [of the evidence] from complying with other rules of evidence, most notably, the hearsay rule." (*Ibid.*, citing *Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1070, fn. 2 [124 Cal.Rptr.2d 142, 52 P.3d 79].) A writing that passes muster under the secondary evidence rule is not necessarily admissible. The writing "still may be inadmissible because of other

---

[4] California's best evidence rule (Evid. Code, former § 1500) was repealed in 1999 (Stats. 1998, ch. 100, § 1, operative Jan. 1, 1999) and was replaced by the secondary evidence rule. (See 29B pt. 4 West's Ann. Evid. Code (2009 supp.) foll. § 1500, p. 114.) The phrase "best evidence rule" was used to describe a rule of evidence that was set forth in former section 1500, which provided that the content of an original of a writing could be proved only by the original of the writing itself, unless a statute provided that secondary evidence such as a copy of the writing or oral testimony was admissible to prove the content of the writing. (1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 3d ed. 1997) Writings, § 31.8, p. 680.)

exclusionary rules of evidence, such as hearsay, opinion, privilege, or irrelevancy." (1 Jefferson, *supra*, § 31.20, p. 685 (rev. 3/06), citing *Pajaro Valley, supra*, 128 Cal.App.4th 1093.)

Without any analysis or explanation, the DMV argues that the use of the phrase "[n]otwithstanding any other provision of law" in Vehicle Code section 23612, subdivision (g)(2) indicates that the Legislature intended that the statute prevail over the provisions of Evidence Code section 1280, Government Code section 11513, and the entire Evidence Code.

In *People v. DeLaCruz* (1993) 20 Cal.App.4th 955, 963 [25 Cal.Rptr.2d 202], the court explained that the language "notwithstanding other provisions of law" in Penal Code section 12403.7 is a "term of art" that "has been read as an express legislative intent to have the specific statute control despite the existence of other law which might otherwise govern." (Accord, *People v. Franklin* (1997) 57 Cal.App.4th 68, 73–74 [66 Cal.Rptr.2d 742] [interpreting Pen. Code, § 667, subds. (c), (d), (f)(1)].) In *California Housing Finance Agency v. E.R. Fairway Associates I* (1995) 37 Cal.App.4th 1508, 1515–1516 [44 Cal.Rptr.2d 591], the court explained: "The introductory phrase of [Health and Safety Code] section 51205(f), '[n]otwithstanding any other provision of law,' qualifies the operative language of the section entitling the prevailing party to recover 'costs and reasonable attorney's fees.' Thus 'any other provision of law' relating to costs, to the extent contrary to or inconsistent with [Health and Safety Code] section 51205(f), is subordinated to the latter provision." The phrase has been interpreted as referring to both statutory and decisional law. (*People v. Tillman* (1999) 73 Cal.App.4th 771, 784–785 [86 Cal.Rptr.2d 715].)

■ Although the introductory phrase "[n]otwithstanding any other provision of law" is broad, it is not unlimited. As in *California Housing*, the phrase "[n]otwithstanding any other provision of law" in Vehicle Code section 23612, subdivision (g)(2) qualifies only the operative language of the statute. Vehicle Code section 23612, subdivision (g)(2) permits the DMV to electronically receive and retrieve documents that are maintained in government forensic lab computerized databases and addresses the foundational problem presented by using copies of reports that are stored electronically in such databases. Any other provision of law relating to those matters is subordinated to Vehicle Code section 23612, subdivision (g)(2) in an administrative per se hearing before the DMV. The statute does not address the public employee records exception or any other exception to the hearsay rule (Evid. Code, § 1280) or the admissibility of evidence generally in administrative proceedings. We therefore reject the DMV's contention that Vehicle Code section 23612, subdivision (g)(2) prevails over Evidence Code section 1280, other provisions of the Evidence Code, and Government Code section 11513, subdivision (d).

The court rejected a similar DMV argument in *Carlton v. Department of Motor Vehicles* (1988) 203 Cal.App.3d 1428 [250 Cal.Rptr. 809] (*Carlton*). In *Carlton*, the DMV suspended a licensee's license, placed him on probation, and stayed the suspension, on the condition the licensee remain free from accident responsibility. (*Id.* at p. 1431.) After the licensee was involved in a second accident, the DMV revoked probation and suspended his license. The only evidence supporting its decision was a computerized transcript of a police report that indicated that, in the police officer's opinion, the licensee was "most responsible" for the accident. (*Id.* at pp. 1431–1432.) The hearing officer admitted the evidence over the licensee's hearsay objection. The trial court concluded that the computerized transcript of the police report was insufficient to support the DMV's finding and granted the licensee's petition for writ of mandate. The appellate court agreed and affirmed the trial court's judgment. (*Ibid.*)

In *Carlton*, the DMV relied on the following language from Vehicle Code section 1806, which governs the DMV's filing and recording of traffic accident reports and permits electronic recording and storage of such reports: "Notwithstanding any other provisions of law, the recorded facts from any electronic recording and storage device maintained by the department shall constitute evidence of the facts in any administrative actions instituted by the department." The DMV argued that Vehicle Code section 1806 authorized the use of peace officer reports to create a prima facie showing of responsibility for an accident for purposes of revoking probation. (*Carlton, supra,* 203 Cal.App.3d at p. 1433.) The court disagreed, explaining: "That section merely provides accident reports can be maintained and recorded in computerized form and the facts in such form shall constitute evidence in administrative actions. Nowhere in the statute is there any suggestion it is intended to supersede the 'emphatic' legislative mandate against sole reliance on hearsay evidence" in Government Code section 11513, subdivision (d). (203 Cal.App.3d at p. 1433.) The court explained that " '[t]he mere admissibility of evidence [at an administrative hearing] does not confer the status of "sufficiency" to support a finding absent other competent evidence' " and that the most likely purpose of this provision in "Vehicle Code section 1806 was to avoid objections to the computerized record of the report under the best evidence rule." (*Id.* at pp. 1433–1434.) Thus, the holding in *Carlton* supports our analysis of Vehicle Code section 23612, subdivision (g)(2) in this case.

■ If computer printouts are offered for the truth of the matter asserted, they must qualify under some hearsay exception. (*Aguimatang v. California State Lottery* (1991) 234 Cal.App.3d 769, 797 [286 Cal.Rptr. 57].) "California cases have held computer printouts admissible when they fit within a hearsay exception as business records (*People v. Lugashi* (1988) 205 Cal.App.3d 632, 641–642 [252 Cal.Rptr. 434]) or official records (*People v. Martinez* (2000) 22

Cal.4th 106, 126–134 [91 Cal.Rptr.2d 687, 990 P.2d 563])." (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1448 [121 Cal.Rptr.2d 627].)

█ We conclude that while Vehicle Code section 23612, subdivision (g)(2) provides that the DMV may receive or retrieve evidence of a licensee's blood-alcohol test results directly from a government forensic lab database and that such evidence is the best available evidence of the test results, the statute does not preclude the opponent of the evidence from challenging the document or other record on other exclusionary grounds, including hearsay.

█ Nothing in the language of Vehicle Code section 23612, subdivision (g)(2) suggests that it was intended to operate as an exception to the hearsay rule. Where the Legislature has intended that a statute operate as an exception to the hearsay rule, it has expressly told us so. (See, e.g., Evid. Code, §§ 1220–1360.) "The hearsay rule is a rule of *exclusion* . . . , but its exceptions are *not rules of admission.* All of the sections of the Evidence Code specifying hearsay exceptions provide that the particular statement 'is not made inadmissible by the hearsay rule.' In other words, a statement within a hearsay exception satisfies the hearsay rule, but it may be objectionable under other exclusionary rules, such as the opinion rule, the Secondary Evidence Rule, or a claim of privilege." (1 Witkin, Cal. Evidence (4th ed. 2000) Hearsay, § 8, pp. 686–687.)

Since we are able to resolve the issue presented based on the plain language of the statute, we need not address the DMV's arguments based on the legislative history of Vehicle Code section 23612, subdivision (g)(2). However, even if it were necessary to look beyond the plain language of the statute and consider the legislative history, we would reach the same conclusion. Upon enacting Vehicle Code section 23612, subdivision (g)(2) in 1999, the Legislature stated: "This bill would provide that any document containing data prepared and maintained in the governmental forensic laboratory computerized data base system that is electronically transmitted or retrieved through public or private computer networks to or by the department is the best available evidence of the chemical test results in all administrative proceedings conducted by the department. The bill provide[s] that, in order to be admissible as evidence in an administrative proceeding, a document described in this paragraph shall bear a certification by the employee . . . who retrieved the document . . . ." (Stats. 1999, ch. 854, § 1.) "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] The Department of Justice is implementing a system that electronically

transmits forensic blood alcohol laboratory test results to local law enforcement and state agencies. The Department of Motor Vehicles may be precluded under current law from using electronic reports when conducting administrative hearings for driving-under-the-influence violations. [¶] In order to avoid the possibility that the Department of Motor Vehicles may not be able to apply appropriate sanctions to the driving privileges of all persons who exceed the legal blood-alcohol limits while operating motor vehicles at the earliest possible time, it is necessary that this act take effect immediately." (*Id.*, § 3.) Nothing in this language suggests that Vehicle Code section 23612, subdivision (g)(2) was intended to prevail over Evidence Code section 1280.

The DMV quotes language from the third reading analysis of the legislation at issue, which states: " 'Laboratory reports are admitted into evidence in [DMV administrative per se] hearings pursuant to the Evidence Code. *Evidence is generally required to be in writing, made at or near the time of the act, and the source(s) of information and method and time of preparation must be trustworthy.* Because the use of 'digital signatures' used in the new DOJ system is not mentioned, there is a potential to create authentication and foundation problems in [DMV] hearings. [¶] This proposal would provide authorization . . . to accept and use electronic or facsimile chemical test results in all administrative proceedings conducted by the department. [¶] Without this urgency measure, DOJ would have to continue to support a secondary system for DMV's use based on lab results in printed form.' "[5] (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1282 (1999–2000 Reg. Sess.) as amended Apr. 29, 1999, p. 5, italics added.) That the analysis mentioned the requirements of Evidence Code section 1280 in the italicized language does not support the conclusion that the proposed legislation was intended to abrogate the requirements of Evidence Code section 1280, as the DMV contends. The legislative history the DMV cites supports the conclusion that the Legislature was concerned about the foundational problems presented by the electronic retrieval of testing results from the DOJ's new computers.

For these reasons, we reject the DMV's contention that by adopting Vehicle Code section 23612, subdivision (g)(2) the Legislature intended to clear away any obstacles presented by the application of Evidence Code section 1280's foundational requirements to the evidence of blood-alcohol test results from government forensic laboratories.

III. *Admissibility of Evidence of PAS Test Results*

The DMV contends the trial court erred when it excluded and refused to consider the PAS test results.

---

[5] The DMV first raised this point at oral argument before the trial court.

## A. *Procedural Background*

In the administrative per se hearing, Molenda's counsel objected to the admission of any evidence that referred to the results of the PAS testing on the grounds that there was no foundation to support the accuracy of the readings and under the authority of *Coniglio, supra,* 39 Cal.App.4th 666.[6] The DMV hearing officer sustained both objections and stated that he would not consider the PAS test results for numerical proof of Molenda's blood-alcohol level. However, he did consider the PAS test results to the extent that they confirmed the presence of alcohol and supported the officer's preliminary conclusion that Molenda was intoxicated.[7]

In opposition to Molenda's petition for writ of mandate, the DMV argued that the PAS test results were admissible to establish Molenda's blood-alcohol content. It argued that the PAS test results met the foundational requirements of Title 17 and that the trial court was not bound by the hearing officer's "mistaken ruling" excluding the PAS test results. In response, Molenda renewed her objections to the PAS evidence.

At the hearing on the writ petition, the trial court ruled that "Vehicle Code Section 13559[8] and the foundational facts necessary before the PAS test

---

[6] In *Coniglio,* this court stated that PAS devices, which are aimed at detecting the presence of alcohol, are not subject to the compliance standards set forth in Title 17. (*Coniglio, supra,* 39 Cal.App.4th at pp. 677–681.) Subsequently, the California Supreme Court stated: "As the Court of Appeal explained in [*People v. Bury* (1996) 41 Cal.App.4th 1194, 1202 [49 Cal.Rptr.2d 107]], title 17 regulations apply to PAS tests that determine the *concentration* of alcohol in the blood but not those that determine only its *presence.* [Citation.] The *Bury* court properly rejected as dicta the finding in *Coniglio* . . . that title 17 never applies to PAS tests." (*People v. Williams* (2002) 28 Cal.4th 408, 414, fn. 2 [121 Cal.Rptr.2d 854, 49 P.3d 203] (*Williams*).)

[7] After the hearing officer asked whether Molenda had any objections to the documents that had been placed in evidence, the following discussion ensued:

"COUNSEL DUDLEY: [W]ith regard to the extent that any of the reports contain reference to a specific alcohol level as a result of the Preliminary Alcohol Screening Device, I would object to those portions of the documents being received into evidence and used as evidence of the specific alcohol level, since there has been no foundational evidence as to the accuracy of the actual (overlapping)

"HEARING OFFICER TRUONG: Objection is sustained.

"COUNSEL DUDLEY: And also the uh, Preliminary Alcohol Screening device. I object under *Coniglio* . . . *v.* [*DMV*] case 39 Cal.App.4th page 666.

"HEARING OFFICER TRUONG: Objection sustained. I will not use—the Department will not consider any PAS results as the—for numerical proof of the blood alcohol."

Molenda also made other objections to the documentary evidence.

[8] Vehicle Code section 13559 sets forth procedural rules governing the trial court's review of a DMV order following an administrative per se hearing. It provides in relevant part: "The review shall be on the record of the hearing and the court shall not consider other evidence. If the court finds that the department exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a

could be considered were never established" and refused to consider the evidence of the PAS test results.

### B. *General Rules Regarding the Admissibility of the PAS Test Results*

As noted previously, we review the trial court's rulings regarding the admissibility of evidence, including the PAS test results, under the deferential abuse of discretion standard. (*City of Ripon v. Sweetin, supra*, 100 Cal.App.4th at p. 900; *Williams, supra*, 28 Cal.4th at pp. 417–418 [admissibility of PAS test results].)

 The PAS breath test results were admissible upon a showing of *either* compliance with the regulations set forth in Title 17 *or* the foundational elements described in *People v. Adams* (1976) 59 Cal.App.3d 559, 561 [131 Cal.Rptr. 190] (*Adams*), which include: (1) properly functioning equipment, (2) a properly administered test, and (3) a qualified operator. (*Williams, supra*, 28 Cal.4th at pp. 414, 417.) Title 17 compliance and the foundational requirements from *Adams* are distinct and independent means to support the admission of blood-alcohol test results. (*Williams*, at p. 416.) For example, in *Williams*, the court concluded that although the evidence of the PAS testing performed in that case did not meet the Title 17 foundational requirements, the test results were reliable and admissible under the *Adams* foundational requirements. (*Williams*, at pp. 417–418.)

Title 17 contains various regulations relating to the analysis of blood, breath, or urine samples to determine the alcohol content of the samples. (Tit. 17, §§ 1215–1222.2.) With regard to breath samples, the Title 17 regulations address the collection and handling of the samples (Tit. 17, §§ 1219, 1219.3) and set forth standards governing the instruments and accessories that may be used to obtain and test the samples. (Tit. 17, §§ 1221.1, subd. (a), 1221.2, subd. (a), 1221.3.) The regulations also set forth procedures for administering breath tests, for determining the accuracy of the testing devices, for training persons who operate the devices, for recordkeeping related to the accuracy testing, and for expressing analytical results. (Tit. 17, §§ 1221.4, 1221.5.)

In this case, there was evidence that Officer Barry complied with Title 17's standards for administering the test.[9] On the other hand, there was no

---

determination which is not supported by the evidence in the record, the court may order the department to rescind the order of suspension or revocation and return, or reissue a new license to, the person."

[9] As required by Title 17, Officer Barry obtained "2 separate breath samples which result[ed] in determinations of blood alcohol concentrations which do not differ from each other by more than 0.02 grams per 100 milliliters." (Tit. 17, § 1221.4, subd. (a)(1).) Although contested, there was evidence that Officer Barry observed Molenda for 15 minutes prior to obtaining the

evidence regarding the type of device used to conduct the PAS testing, other than a serial number for the device. There was no information regarding the manufacturer, make, or model of the device. The record is also silent regarding the extent of Officer Barry's training on the PAS device and the extent of any testing done to confirm the accuracy of the device. Thus, the evidence here did not meet the foundational requirements of Title 17.

For these same reasons, the evidence does not meet the foundational requirements described in *Adams*, to wit: (1) properly functioning equipment, (2) a properly administered test, and (3) a qualified operator. (*Williams, supra,* 28 Cal.4th at p. 417.) Again, while there was evidence regarding the administration of the test, there was no evidence regarding the type of device used, Officer Barry's qualifications to operate the PAS device, or whether the device was functioning properly.

### C. *Applicability of Evidence Code Section 664 Presumption*

DMV contends that since it relied on the foundational requirements of Title 17, it enjoyed the benefit of the official duty presumption in Evidence Code section 664, which creates a rebuttable presumption that test results recorded on official forms were obtained by following the guidelines of Title 17. The DMV contends that the evidence in combination with the presumption establishes the necessary foundation for admission of the PAS test results. In other words, the DMV contends the presumption of an official duty regularly performed supplied the missing foundational elements.

■ We begin with a brief overview of the burdens of proof in a DMV administrative hearing. In such hearings, the DMV bears the burden of proving by a preponderance of the evidence certain facts, including that the driver was operating a vehicle with a blood-alcohol level of 0.08 percent or higher. (Veh. Code, §§ 13557, subd. (b)(2)(C)(i), 13558, subd. (c)(2); *Lake, supra,* 16 Cal.4th at pp. 456, 463; *Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1348 [107 Cal.Rptr.2d 909].) The DMV may satisfy its burden using the presumption of section 664 of the Evidence Code. (*Petricka, supra,* at p. 1348.) "Procedurally, it is a fairly simple matter for the DMV to introduce the necessary foundational evidence. Evidence Code section 664 creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17. [Citations.] . . . The recorded test results are presumptively valid and the DMV is not required to present additional foundational

---

breath tests. (Tit. 17, § 1219.3.) The record does not disclose what time Officer Geddes arrived on scene. Officers Barry and Lloyd were dispatched at approximately 11:35 p.m. Officer Barry testified that he arrived on scene at 11:40 p.m. His partner, Officer Lloyd, prepared a written report indicating that he and Officer Barry arrived "at approximately" 11:48 p.m. Officer Barry performed the PAS breath tests at 12:01 a.m. and 12:03 a.m.

evidence." (*Shannon v. Gourley* (2002) 103 Cal.App.4th 60, 64–65 [126 Cal.Rptr.2d 327].) With this presumption, an officer's sworn statement that the breath-testing device recorded a certain blood-alcohol level is sufficient to establish the foundation, even without testimony at the hearing establishing the reliability of the test. (*Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 140–141 [7 Cal.Rptr.2d 818] (*Davenport*).)

"Once the DMV establishes its prima facie case by presenting documents contemplated in the statutory scheme, the driver must produce affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV. [Citations.] 'The licensee must show, "through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed . . . ." [Citation.] Once such showing has been made, the burden shifts to the DMV to prove that the test was reliable despite the violation.' " (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1233 [130 Cal.Rptr.2d 209].)

Citing *Coniglio, supra,* 39 Cal.App.4th at pages 677–678 and 683, Molenda argues that the DMV was not entitled to rely on the presumption in Evidence Code section 664 because there was no evidence that the device used in this case was a Title 17 instrument. Molenda's reliance on *Coniglio* is misplaced. In *Coniglio,* this court held that the DMV was not entitled to rely on the Evidence Code section 664 presumption because the Title 17 regulations did not apply to the PAS test. We reasoned that since there were "no 'governing statutes or regulations' regulating the testing and reliability of the PAS test," the court could not presume that the PAS test results were reliable and held that the DMV had the burden to show the PAS test met the foundation requirements of *Adams.* (39 Cal.App.4th at pp. 683–684.)

After we decided *Coniglio,* the California Supreme Court held that Title 17 regulations apply to PAS tests that determine the concentration of alcohol in the blood but not those that determine only its presence. (*Williams, supra,* 28 Cal.4th at p. 414, fn. 2.) Since the PAS test in this case determined both the presence of alcohol and the concentration of alcohol, under *Williams,* Title 17 applies to the PAS test at issue here. Thus, under the authority set forth above, the DMV may be able to rely on the presumption of an official duty regularly performed to satisfy the missing foundation elements. However, as we explain below, other factors preclude use of the presumption in this case.

To determine whether the presumption of Evidence Code section 664 applies under the circumstances of this case, we review *Davenport,* one of the first cases to apply the presumption. In *Davenport,* no evidence was adduced at the DMV hearing that established the reliability of the breath test that was administered to the licensee. On the other hand, the licensee "presented no

evidence that the test was not reliable, either by cross-examining the officer as to his qualifications, his manner of administering the test, and the condition of the machine, or by offering his own evidence on any of those matters." (*Davenport, supra,* 6 Cal.App.4th at p. 140.) The licensee contended that under that state of the evidence, the breath test results were unreliable to prove his blood-alcohol content.

The *Davenport* court concluded that "the presumption of official duty regularly performed (Evid. Code, § 664) supplies sufficient indicia of the trustworthiness of blood-alcohol test results to justify reliance upon such results to support a license suspension, subject to a showing by the licensee that the test was not performed in compliance with statutory requirements." (*Davenport, supra,* 6 Cal.App.4th at p. 141.) "[W]here it is established that the matters reported are the direct observations and within the personal knowledge of the reporting officer, a sworn 367 report[10] introduced at a [DMV administrative per se hearing] is presumed trustworthy, based upon the officer's duty under [Vehicle Code] sections 13353 and 23158.2 to report the facts of an arrest for drunk driving and an incident blood-alcohol test." (6 Cal.App.4th at p. 143.) The court explained that the Evidence Code section 664 presumption "places upon the licensee against whom a 367 report is offered the burden of proof as to the nonexistence of the foundational trustworthiness of the report as a whole, and in particular, the nonexistence of the foundational reliability of tests upon which the report is partly based." (6 Cal.App.4th at p. 143.) The court concluded that "due process is not offended where an officer's sworn report of the results of blood-alcohol tests administered by the officer to a licensee is admitted into evidence and relied upon to find that the licensee was in actual control of a vehicle" while having a blood-alcohol level in excess of the legal limits and that due process is not violated "if the licensee's driving privilege is suspended or revoked based upon such finding." (*Id.* at p. 145.)

The *Davenport* court also observed that the licensee did not allege he was denied an opportunity to contest the reliability of the test offered against him. "Indeed, he made no effort to contest it." (*Davenport, supra,* 6 Cal.App.4th at p. 145.) The court held "[u]nder these circumstances, the hearing officer properly relied upon the statutory presumption that the test was properly administered by a trained officer, using properly functioning equipment.

---

[10] As the *Davenport* court observed, Vehicle Code former "[s]ection 23158.2, subdivision (b) require[d] the [DMV] to furnish or approve forms for the sworn reports of information required by [Vehicle Code former] section 23158.2, subdivision (a), which information is relevant to license suspensions . . . ." (*Davenport, supra,* at p. 138, fn. 2.) These same requirements are now found in Vehicle Code section 13380. At the time of Molenda's arrest, the form was designated a "DS 367" form. We shall hereafter refer to this report form as the "367 form."

Based upon the presumption, the hearing officer could properly and reasonably conclude that the test results were reliable." (*Ibid.*)

This case is distinguishable from *Davenport* in several respects. First, the breath test in *Davenport* was a "breath-to-blood-alcohol" test, administered after the licensee was arrested. (*Davenport, supra,* 6 Cal.App.4th at p. 138.) The breath test in this case was a PAS test, which is not the functional equivalent of a postarrest breath test. (*Wilson, supra,* 114 Cal.App.4th at p. 960.)

Second, the results of the breath test in *Davenport* were reported in the officer's sworn report on a 367 form and the court relied on the sworn report to provide the foundation. (*Davenport, supra,* 6 Cal.App.4th at pp. 137–138.) The 367 form in this case contains a paragraph where the operator of the breath test device certifies "under penalty of perjury" that the "breath test sample results were obtained in the regular course of [the officer's] duties," that the officer is "qualified to operate this equipment," and that "the test was administered pursuant to the requirements of Title 17 . . . ." Unlike the officer in *Davenport,* Officer Barry did not enter the PAS test results on the 367 form. More importantly, he did not sign the certification on the 367 form. Instead, Officer Barry made a notation on the 367 form indicating that Molenda had submitted to a blood test. A reasonable inference from this evidence is that the officer intended to rely on the results of the blood test, not the PAS test. Officer Barry did include the PAS test results in his unsworn investigative report, which was appended to the 367 form. However, that report did not contain the certification from the 367 form that provided the necessary foundation.

Third, in *Davenport,* as in this case, the licensee objected to the admission of the breath test results in the administrative hearing on the grounds that they did not comply with the foundation requirements of *Adams.* (*Davenport, supra,* 6 Cal.App.4th at p. 138.) However, unlike this case, the hearing officer in *Davenport* overruled the objection and took official notice of the police officer's sworn statement on the 367 form. (*Ibid.*) In contrast, the hearing officer in this case sustained Molenda's objection and stated that he would not consider the PAS test results for numerical proof of Molenda's blood-alcohol level. The *Davenport* court noted that the licensee did not claim he was denied an opportunity to contest the reliability of the test offered against him and made no effort to contest it. The court concluded that under the circumstances of that case, the hearing officer properly relied on the presumption that the test was properly administered by a trained officer, using properly functioning equipment. (*Davenport, supra,* 6 Cal.App.4th at p. 145.) In contrast, Molenda objected to the admission of the PAS test results on

foundational grounds. After the hearing officer sustained her objection, Molenda relied on that ruling and did not present evidence challenging the reliability of the PAS test.

For these reasons, we conclude that under the circumstances of this case, which are different from the circumstances in *Davenport*, the DMV may not rely on the Evidence Code section 664 presumption to establish the foundation necessary for the admission of the PAS test results. In light of our conclusion, we hold that the trial court did not abuse its discretion when it excluded and refused to consider evidence of the PAS test results.

### DISPOSITION

The judgment is affirmed.

Bamattre-Manoukian, Acting P. J., and Duffy, J., concurred.