Filed 5/28/14  Johnson v. DMV CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| PAUL ANDREW JOHNSON, | |
| Plaintiff and Appellant, | E059305 |
| v. | (Super.Ct.No. CIVRS1209788) |
| DEPARTMENT OF MOTOR VEHICLES, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Joseph R. Brisco, Judge.  Affirmed.

Law Offices of Michael A. Scafiddi, Michael A. Scafiddi and Benjamin R. Cates for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Celine M. Cooper and Gary S. Balekjian, Deputy Attorneys General, for Defendant and Respondent.

Plaintiff and appellant Paul Andrew Johnson was arrested under suspicion of driving under the influence (Veh. Code, §§ 23152, 23153,  23140) and had his driver's license suspended.  After an administrative per se hearing in which plaintiff challenged

1

his license suspension, the hearing officer upheld the suspension. Plaintiff filed a petition for writ of mandate in the superior court seeking to set aside the order of suspension. The court denied plaintiff's petition. On appeal, plaintiff contends the Department of Motor Vehicles (DMV) failed to establish the admissibility of the results of plaintiff's blood test such that the court's denial of his petition for writ of mandate must be reversed. We affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

On May 3, 2012, at approximately 1:00 a.m., a CHP officer observed plaintiff's vehicle weaved "badly" within the lane in which he drove; the vehicle's right tires crossed over the line of lane delineation three times; plaintiff traveled at varying speeds of up to 75 miles per hour in a 65 mile per hour zone. After pulling plaintiff over, the officer noted plaintiff exhibited "objective symptoms of intoxication" including bloodshot, watery eyes; the odor of an alcoholic beverage; an unsteady gate; and slurred speech. A sample of plaintiff's blood was taken at 1:45 a.m.

Plaintiff's blood sample was "Analyzed/Reported" on May 14, 2012, by a forensic alcohol analyst. The results of that test were reported as establishing plaintiff had a blood alcohol level of 0.13 percent at the time the sample was taken. Exhibit No. 3, the Report on the Receipt and Examination of Ethyl Alcohol, was prepared or printed on May 22, 2012. The report reads, "[t]he recording of the blood sample analysis results was done at the time of the analysis as indicated above under the heading 'Date Analyzed/Reported.' Furthermore, the transfer of data for reporting purposes was performed electronically in

2

accordance with the laboratory's policies and procedures." The forensic alcohol analyst signed the report, beneath which the date May 23, 2012, appears.

At the administrative per se hearing on August 30, 2012, plaintiff objected to admission of exhibit No. 3 on the basis that it did not establish the results of the blood test were reported at or near the time it was analyzed as required by Evidence Code section 1280, as a public records exception to the rule against hearsay evidence. Plaintiff submitted exhibit No. A, which he had obtained by subpoena duces tecum served on the San Bernardino County Sheriff's Department. Exhibit No. A, also signed by the same forensic alcohol analyst reflected in exhibit No. 3, included a blood alcohol worksheet dated May 14, 2012, which reflected the results of two "racks" or "runs" of plaintiff's blood alcohol level. A handwritten notation toward the bottom of the worksheet reflects "Results Entered on 5/22/12."

Plaintiff contended the disparity between the notation on exhibit No. 3 that test results had been reported on May 14, 2012, and on exhibit No. A that results had been entered on May 22, 2012, reflected that the results of the blood test had actually been reported on the latter date. Thus, plaintiff maintained exhibit No. 3 should not be admitted into evidence because the test result had not been reported at or near the time it was analyzed.

The hearing officer indicated he would reserve ruling on the admission of exhibit No. 3 to permit the subpoena of the forensic alcohol analyst to clarify what was meant by the notation on the blood alcohol worksheet reading "Results Entered on 5/22/2012": "I don't know what results they're being referred to." At the next hearing on November 27,

3

2012, plaintiff maintained he had been informed off the record by the hearing officer that "management" had not approved the hearing officer's subpoena of the forensic alcohol analyst. Plaintiff continued to object to the admission of exhibit No. 3 on the same basis as elucidated at the prior hearing. Nonetheless, the hearing officer overruled the objection and moved exhibit No. 3 into evidence.

On December 14, 2012, the hearing officer issued his findings of fact and decision. The hearing officer determined the CHP officer had reasonable cause to believe plaintiff was driving his vehicle while under the influence; the officer had conducted a lawful arrest; and plaintiff had, in fact, been driving with a blood alcohol level of 0.08 percent or higher.

The hearing officer specifically noted, "[i]n [the DMV's] Exhibit [No. 3], the blood analysis, it clearly states that [plaintiff's] blood sample was analyzed and recorded on [May 14, 2012]. The blood alcohol worksheet submitted by Counsel, dated [May 14, 2012,] does not articulate or distinguish clearly what results were entered on [May 22, 2012]. Counsel's argument is insufficient as the analysis does meet the criteria . . . regarding the timelines of the recordation." The hearing officer also observed plaintiff had the opportunity independently to subpoena the forensic alcohol analyst to testify at the hearing, which he had not done. The hearing officer "re-imposed" the suspension of plaintiff's driving privileges.

Plaintiff filed a petition for writ of mandate in the superior court, likewise challenging admission of exhibit No. 3 on the basis of the timeliness of the recordation of the blood alcohol level analysis. At the hearing on the petition, the trial court noted the

4

decision of this court in *Lee v. Valverde* (2009) 178 Cal.App.4th 1069 (*Lee*) (Fourth Dist., Div. Two), was controlling on the issue. Therefore, the court denied plaintiff's petition.

## DISCUSSION

Plaintiff contends the trial court abused its discretion in its determination that admission of the blood alcohol level contained in exhibit No. 3 was proper. We disagree.

"In ruling on a petition for writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, whether the weight of the evidence supported the administrative decision. [Citation.] On appeal, this court's role is to review the record to determine whether the trial court's findings are supported by substantial evidence, resolving all evidentiary conflicts and drawing all legitimate and reasonable inferences in favor of the trial court's decision. [Citation.]" (*Lee*, *supra*, 178 Cal.App.4th at p. 1075.)

"'We review for abuse of discretion the court's ruling the Forensic Report did not meet the timeliness requirement of [Evidence Code] section 1280, subdivision (b). "A trial court has broad discretion in determining whether a party has established [the] foundational requirements [of Evidence Code section 1280]. [Citation.] Its ruling on admissibility 'implies whatever finding of fact is prerequisite thereto; a separate or formal finding is, with exceptions not applicable here, unnecessary. [Citation.]' [Citation.] A reviewing court may overturn the trial court's exercise of discretion "'only upon a clear showing of abuse.'"'" [Citation.]' [Citation.]" (*Lee*, *supra*, 178 Cal.App.4th at p. 1075, fn. omitted.)

5

Here, as in *Lee*, exhibit No. 3 met the criteria of Evidence Code section 1280, subdivision (b), because it reflected plaintiff's blood sample had been "Analyzed/Reported" on May 14, 2012. (*Lee*, *supra*, 178 Cal.App.4th at pp. 1078-1079.) As we noted in *Lee*, "The use of the term *reported* in the phrase 'analyzed and reported' would be mere surplusage unless the results of the analysis were actually recorded on the same date." (*Id*. at p. 1079.) Moreover, exhibit No. 3 also contained language that reflected the "recording of the blood sample analysis results was done at the time of the analysis as indicated above under the heading 'Date Analyzed/Reported.'"

As the hearing officer observed, it is unclear to what precisely the notation on the bottom of the blood alcohol worksheet reading "Results Entered on" May 22, 2012, referred. Indeed, at least 15 other individuals' blood test results were reported on the sheet; the sheet also bears the date May 14, 2012, at the top and twice on the bottom; it contains a third date of May 15, 2012; the notation at issue is initialed, but unsigned; and the individual who initialed it is unidentified. As the hearing officer further noted, plaintiff had the opportunity to subpoena the forensic alcohol analyst to explain the ambiguities, but chose not to. The court acted within its discretion in finding exhibit No. 3 admissible and, hence, denying plaintiff's petition.

6

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON      </u>
                 J.

We concur:

<u>McKINSTER     </u>
      Acting P. J.

<u>KING          </u>
     J.

7