Filed 6/12/23  P. v. Garcia CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FERNANDO GARCIA, <br><br> Defendant and Appellant. | F084575 <br><br> (Tulare Super. Ct. No. PCF356189) <br><br> **OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Robert Anthony Fultz, Judge.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri, and Tia M. Coronado, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Poochigian, Acting P. J., Franson, J. and Snauffer, J.

Defendant and appellant Fernando Garcia (defendant) contends the court erred in admitting the results of a preliminary alcohol screening (PAS) at his driving under the influence (DUI) trial. We reject defendant's claim and affirm.

## BACKGROUND

In an information filed June 3, 2021, the Tulare County District Attorney charged defendant with driving under the influence of alcohol (count 1; Veh. Code, § 23152, subd. (a));[1] driving while having a 0.08 percent or higher blood-alcohol content (BAC) (count 2; § 23152, subd. (b)); and driving while driving privilege was suspended for a prior DUI conviction (count 3; § 14601.2, subd. (a).)

Defendant admitted three prior DUI convictions. A jury found defendant guilty as charged.

The court sentenced defendant to two years on count 1 and a stayed (Pen. Code, § 654) term of two years on count 2. No time was imposed on count 3.

## FACTS

On July 23, 2017, defendant walked into a store and asked if "the air machine" worked. Defendant went outside and returned to the store shortly thereafter. He began cursing, acting belligerently, and making threats. A store employee told him to calm down and that the air machine was not theirs. The store employee testified that defendant seemed "disoriented" and "kind of out of it," and smelled of alcohol. Defendant became violent with the employee and his manager. The police were called.

Deputy Hector Hernandez responded to the scene at about 5:30 p.m. When he arrived, defendant was sitting in the driver's side of a vehicle. Defendant exuded a strong odor of alcohol and was sweating heavily. Hernandez contacted the California Highway Patrol (CHP) to conduct a DUI investigation. Hernandez detained and searched defendant, who had keys in his pocket.

---

[1] All further statutory references are to the Vehicle Code unless otherwise stated.

2.

CHP Officer Jonathan Quintero responded to the scene. Quintero contacted defendant around 6:09 p.m. and noticed the distinct odor of alcohol "emitting" from him. Defendant's eyes were red and watery, and his speech was slurred. Quintero told defendant to exit the vehicle and asked him pre-field sobriety test questions. Defendant said he had driven to the location and had been traveling from Delano to Pixley. Defendant said he had consumed two tall cans of "Coors," which he began drinking at 12:30 p.m. and stopped at 3:00 p.m.

Officer Quintero then administered the following field sobriety tests: horizontal gaze nystagmus, the walk and turn test, the one-leg stand, and a PAS test. During the nystagmus test, Quintero observed "nystagmus" or "jerky and sustained" movement. Such a result is a "clue" indicating alcohol consumption.

Defendant performed poorly on the one-leg stand test, consistent with alcohol consumption. Defendant's performance on the walk and turn test was also consistent with alcohol consumption.

Officer Quintero also administered a PAS test or a "breathalyzer." Quintero went through a serious of checks on the device to ensure there was no residual alcohol from a previous test. Quintero also confirmed the device was functioning properly within operating temperature. Quintero obtained two valid results from the test. The first sample was 0.148 percent and the second was 0.144 percent.

Officer Quintero arrested defendant and asked if he wanted to complete a breath test or a blood test. Defendant elected to do a breath test, which was conducted at the Porterville CHP Office at 8:00 p.m. That test yielded a result of 0.08 percent. A second sample was taken at 8:03 p.m. and yielded a result of 0.08 percent.

### Criminalist Greg Masters

Greg Masters, a criminalist with the Department of Justice, testified for the prosecution as an expert in forensic alcohol analysis and the effect of alcohol and drugs on the human body.

Masters explained that absorption is the process of alcohol going into the bloodstream. On an empty or nearly empty stomach, alcohol is absorbed in 15 to 60 minutes after drinking finishes. In contrast, when an individual has food in their system, absorption occurs in 30 to 90 minutes.

Elimination is the process of alcohol being removed from the bloodstream. This primarily occurs as a result of enzymes produced by the liver, but a small amount of alcohol is also excreted in breath, urine and perspiration. Most individuals eliminate alcohol at a rate of about 0.015 to 0.02 percent per hour. For heavy drinkers, elimination may occur at a rate as high as 0.03 percent per hour.[2]

People can acquire "tolerance" to alcohol if they consistently drink to high blood-alcohol concentrations. However, even when a person acquires tolerance to the physical effects of alcohol (being able to walk in a straight line), they still suffer from all the mental impairment that comes with intoxication.

To raise the BAC of a 5-foot 9-inch, 195-pound male to 0.08 percent, it would take approximately three and one-half to four beers. If that person had stopped drinking at 3:00 p.m. and their BAC was at 0.08 percent at 8:00 p.m., then they would have had to drink seven and one-half to eight beers.

Alcohol affects a person's ability to drive because it is a central nervous system depressant that causes mental and physical impairment. It affects their inhibitions, self-confidence, judgment, multitasking, reaction time, vision, and perception of distance, time, and speed. Alcohol begins to cause slight mental impairments at 0.02 percent BAC. By 0.08 percent BAC, a person is too impaired to safely operate a motor vehicle.

Signs of intoxication include alcoholic odor from the pores, red eyes, watery eyes, slurred speech, and impaired balance and coordination.

---

[2] Presumably, these elimination figures refer to percentage *points* per hour.

*Department of Motor Vehicles Form*

Before trial, defendant moved to dismiss the complaint due to the gap in time between its initial filing and arraignment. The prosecution opposed the motion and included various exhibits with its opposition. Among the exhibits was a Department of Motor Vehicles (DMV) form filled out by Officer Quintero entitled "21 and Older Officer's Statement." The form has various sections for officers to input information such as "objective signs of intoxication," or breath, urine, or blood test results. One of the sections relates to the PAS test. In this section, the officer can input the results of the PAS tests and certify that it was administered correctly and that the administering officer is qualified and trained. While Quintero filled out the section reflecting defendant's chemical breath test results, he left the PAS section blank. This form was not admitted as evidence as trial.

## DISCUSSION

Defendant contends the court erred in admitting the PAS test results without foundational evidence showing the test was administered in accordance with California Code of Regulations, title 17, sections 1215 through 1222.2 (hereafter Title 17). We disagree.

"Title 17 contains various regulations relating to the analysis of blood, breath, or urine samples to determine the alcohol content of the samples. (Title 17, §§ 1215–1222.2.) With regard to breath samples, the Title 17 regulations address the collection and handling of the samples (Title 17, §§ 1219, 1219.3) and set forth standards governing the instruments and accessories that may be used to obtain and test the samples. (Title 17, §§ 1221.1, subd. (a), 1221.2, subd. (a), 1221.3.) The regulations also set forth procedures for administering breath tests, for determining the accuracy of the testing devices, for training persons who operate the devices, for recordkeeping related to the accuracy testing, and for expressing analytical results. (Title 17, §§ 1221.4, 1221.5.)" (*Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 1000.)

A prosecutor may, but need not, prove compliance with Title 17 to establish the requisite foundation for breath test results. Alternatively, instead of proving compliance with Title 17, a prosecutor may simply show: (1) the equipment was functioning properly, (2) the test was properly administered, and (3) the test was administered by a qualified operator. (*People v. Williams* (2002) 28 Cal.4th 408, 417 (*Williams*).) This three-part evidentiary showing will establish foundation even without compliance with Title 17. (*Ibid.*)

As explained below, we conclude the prosecutor satisfied the three-part evidentiary showing described by *Williams*. Consequently, we find it immaterial whether compliance with Title 17 was shown.

### Equipment Properly Functioning

The prosecutor adduced testimony that Officer Quintero confirmed the device was functioning properly within operating temperature before using it.

### Proper Administration of the Test

Officer Quintero checked the PAS test device to ensure there was no residual alcohol from any previous tests. Quintero then took two samples "to ensure that they're consistent and you don't get a reading that's completely too far apart from the initial first reading."

Defendant claims that Officer Quintero did not observe defendant for 15 minutes before administering the PAS test. There are several problems with defendant's argument. First, the 15-minute timeframe comes from Title 17. (See 17 C.C.R., § 1221.1, subd. (b)(1).) And, as noted above, a prosecutor need not establish compliance with Title 17 if the three-part evidentiary showing is met. This is true even where Title 17 speaks to a particular element of the three-part evidentiary showing. For example, in *Williams* the court acknowledged that the breath test device "was not tested with the frequency demanded by the regulations" in Title 17. (*Williams*, *supra*, 28 Cal.4th at p. 417.) However, it was tested at a lower frequency and always performed within the

6.

acceptable range.  (*Ibid.*)  This was sufficient even though it did not meet the standard set by Title 17.  Similar here, defendant has provided no reason to conclude that "proper administration" under the three-part showing can *only* be satisfied if the defendant was observed for the full 15-minute timeframe prescribed by Title 17.

Second, the evidence shows Officer Quintero *did* observe defendant for 15 minutes.  Quintero contacted defendant around 6:09 p.m.  Quintero conversed with defendant, and noticed he smelled like alcohol, his eyes were red and watery, and his speech was slurred.  Quintero then explained to defendant what he would be doing and began the DUI evaluation.  Quintero administered multiple FSTs, including the PAS test.  The first sample was taken 15 minutes after Quintero contacted defendant and the second sample was taken two minutes after that.

Defendant suggests this evidence does not "necessarily" mean Officer Quintero observed him for 15 minutes because Quintero could have left in the interim to attend to an active crime scene.  But Quintero expressly described what he did after initially contacting defendant, which was to converse with him, observe his appearance and speech, and administer field sobriety tests.  This was would have been more than enough to support a finding that Quintero "observed" defendant for 15 minutes.[3]

In sum, defendant has failed to show the prosecution was required to prove a 15-minute observation time in order to establish the PAS test was properly administered.  Moreover, the evidence showed defendant was observed for 15 minutes when the PAS samples were taken.  Accordingly, we reject defendant's claims.

---

[3] Defendant also points to the DMV form in the record in which the PAS section was left blank by Officer Quintero.  But the failure to fill out a form does not indicate the PAS test was improperly *administered*.  Moreover, defendant did not raise this issue as a basis for excluding the evidence below.

*Qualified Operator*

Officer Quintero had been a CHP officer for 14 years when he testified at defendant's trial in 2022.[4] He had 52 hours of DUI training at the CHP academy. Quintero passed all of his courses at the academy. He has performed "several hundred" DUI investigations. This evidence was sufficient to support the foundational element of the PAS test being administered by a "qualified operator."

Defendant contends otherwise, saying this evidence "did not establish that he was qualified, pursuant to Title 17, to operate a PAS device." Defendant is quick to acknowledge, correctly, that the three-part test is a means of establishing foundation that is distinct and independent of Title 17. Yet, he nonetheless insists the foundation was insufficient because Officer Quintero did not fill out the operator certification section on the DMV form. We disagree. The fact that Quintero left the entire PAS section of the DMV form blank, including the certification that he was a trained and qualified operator, does not indicate that he was *in fact* not trained and qualified. It simply means Quintero did not fill out that section of the form.

In sum, the prosecutor adduced evidence of Officer Quintero's qualifications, and defendant has failed to undermine that evidence or counter that showing in a manner that would render erroneous the trial court's admission of the evidence.

*Evidence Code Section 352*

Defendant contends the PAS test results should have been excluded under Evidence Code section 352. We disagree.

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will … create substantial danger of undue prejudice, …" (Evid. Code, § 352.)

---

[4] Defendant's arrest occurred in July 2017.

" ' "In general, the trial court is vested with wide discretion in determining relevance and in weighing the prejudicial effect of proffered evidence against its probative value. Its rulings will not be overturned on appeal absent an abuse of that discretion." [Citations.]' [Citation.] An abuse of discretion means the trial court acted in an arbitrary, capricious, or absurd manner that resulted in a manifest miscarriage of justice." (*People v. Kocontes* (2022) 86 Cal.App.5th 787, 853.)

Defendant contends the court erred under Evidence Code section 352, because the probative value of the PAS test results was substantially outweighed by its risk of undue prejudice. We disagree.

The PAS had overwhelming probative value, as it provided a preliminary reading of defendant's BAC relatively close in time to when he had been driving. Considering that his BAC at the time of driving was the key issue in count 2 (and was quite relevant to count 1), this factor weighs heavily in favor of admission.

Defendant counters that the probative value was lessened because Officer Quintero was not a qualified operator and did not properly administer the test. We rejected these contentions above.[5]

Defendant contends the fact that the PAS test results were nearly double the chemical breath test results would likely inflame the passions of the jury. However, the fact that the PAS test results were so high was relevant to the case because it speaks to issues of rising versus declining BAC. We cannot say the risk of improper considerations

---

[5] Relatedly, he argues the PAS test results lent a "false aura of reliability" to the chemical breath test results and precluded a rising blood-alcohol argument by the defense. But we have rejected the factual predicates to this argument. Because the PAS test results were properly admitted, the prosecution's expert could reasonably rely on them in rendering an opinion – even one that bolstered the subsequent chemical breath test results. In sum, the aura of reliability the PAS test results lent to the chemical breath test results through the expert's opinion was not "false" or otherwise improper.

by the jury is so high that the court acted arbitrary and capriciously in admitting the evidence.

For these reasons, we conclude the court did not err in admitting the PAS test result evidence. [6]

## DISPOSITION

The judgment is affirmed.

---

[6] The Attorney General provides additional rebuttals to defendant's claims. In light of our conclusions here, we do not reach those issues.